64.     Naomi Home has unlawfully marketed and attempted to sell stools utilizing Guidecraft's trade dress protected children's stool designs throughout the United States, and within the State of New York, through sales on Amazon (see Exhibit B).

65.     In addition, Naomi Home has unlawfully marketed and attempted to sell stools utilizing trade dress protected children's stool designs on the Internet throughout the United States, and within the State of New York, through reseller OJCommerce on Defendant OJCommerce.com's interactive website, www.ojcommerce.com. (see Exhibit C).

66.     Defendants have unlawfully used and are currently unlawfully using Guidecraft's trade dress protected children's stool designs on knock-off products made to appear to be Guidecraft goods or have an affiliation, sponsorship, or other connection with Guidecraft.

67.     Defendants' use of Guidecraft's trade dress protected designs (see Exhibits B and C) constitutes trade dress infringement in violation of U.S. trademark law.

68.     Defendants have used and continue to use Guidecraft's trade dress protected designs on knock-off children's stools of inferior quality to take sales from Guidecraft and profit from such infringing sale of goods.

69.     Defendants sales of products that use Guidecraft's trade dress protected designs on knock-off children's stools of inferior quality cause harm to Guidecraft by tarnishing Guidecraft's reputation for high quality products.

70.     Defendants' willful and persistent use of Guidecraft's trade dress protected appearances of its children's stools has given rise to imminent and irreversible harm.

## COUNT ONE — TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114 (LANHAM ACT § 32)

71.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

72.     Defendants' continued use of Guidecraft's KITCHEN HELPER® trademark, United States trademark Registration No. 5,265,613, constitutes an infringement of Guidecraft's registered trademark and is likely to have and to continue to cause confusion, mistake, and deception to the public as to the identity and origin of Guidecraft's goods, causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

73.     Guidecraft has incurred attorneys' fees to enforce its trademark rights, and Guidecraft has suffered damages as a result of Defendants' actions.

74.     Defendants are liable to Guidecraft for trademark infringement under 15 U.S.C. § 1114 in an amount to be determined at trial.

75.     Defendants' acts of infringement have been and continue to be deliberate, willful, and wanton, making this an exceptional case under 15 U.S.C. § 1117.

76.     Plaintiff is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

## COUNT TWO – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125 (LANHAM ACT § 43)

77.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

78.     The registered KITCHEN HELPER® trademark, as used by Guidecraft in connection with its goods, is a distinctive mark and has become associated with Guidecraft and thus exclusively identifies Guidecraft's children's stools.

79.     Defendants' continued use of Guidecraft's registered trademark to promote, market, or sell its knock-off products in direct competition with Guidecraft products constitutes unfair competition and false designation of origin pursuant to 15 U.S.C. § 1125(a).

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

17

80.     Defendants have used and continue to use Guidecraft's trademarked design in the operation of Defendants' retail business.

81.     Defendants have promoted their products using Guidecraft's registered trademark in order to compete directly with Guidecraft.

82.     Defendants' continued use of Guidecraft's registered trademark is likely to cause confusion, mistake, and deception among consumers.

83.     Defendants' unfair competition has caused and will continue to cause damage to Guidecraft, including the expenditure of attorneys' fees, and is causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

84.     Guidecraft is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

## COUNT THREE – TRADE DRESS INFRINGEMENT
### 15 U.S.C. § 1125 (LANHAM ACT § 43)

85.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

86.     The trade dress of the KITCHEN HELPER® children's stools is non-functional.

87.     The trade dress of the KITCHEN HELPER® children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures and the sale of tens of thousands of KITCHEN HELPER® children's stools since 2008. Those stools, which are the first stools Guidecraft brought to the market, are recognized by customers and users, as well as visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of KITCHEN HELPER® children's stools under the Guidecraft trade dress.

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

88.     The trade dress of the Step-Up children's stools is non-functional.

89.     The trade dress of the Step-Up children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures, which have resulted in the sale of thousands of Step-Up children's stools that are recognized by customers, users, and visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of Step-Up children's stools under the Guidecraft trade dress.

90.     The trade dress of the High-Rise Step-Up children's stools is non-functional.

91.     The trade dress of the High-Rise Step-Up children's stools is unique and distinctive and has acquired secondary meaning through Guidecraft's extensive marketing expenditures, which have resulted in the sale of thousands of High-Rise Step-Up children's stools that are recognized by customers, users, and visitors who see these outstanding stools in nursery facilities and friend's homes, such that a large number of consumers associate Guidecraft as the source of High-Rise Step-Up children's stools under the Guidecraft trade dress.

92.     Defendants have used and continue to use Guidecraft's trade dress protected KITCHEN HELPER®, Step-Up, and High-Rise Step-Up children's stools designs in the operation of Defendants' retail business.

93.     Defendants' continued use of Guidecraft's protected trade dress designs of children's stools is likely to confuse, cause mistake, and/or deceive consumers into believing that Defendants' stools are those of Guidecraft, or are affiliated with, endorsed by, sponsored by, or otherwise associated with Guidecraft.

94.     Defendants' continued use of non-functional designs of Guidecraft's KITCHEN HELPER®, Step-Up, and High-Rise Step-Up children's stools constitutes trade dress infringement in violation of U.S. trademark law under 15 U.S.C. § 1125(a).

95.     Defendants' trade dress infringement has caused and will continue to cause damage to Guidecraft, including the expenditure of attorneys' fees, and is causing irreparable harm to Guidecraft for which there is no adequate remedy at law.

96.     Guidecraft is entitled to a permanent injunction against Defendants, as well as other remedies under the Lanham Act, including but not limited to compensatory damages, disgorgement of Defendants' profits, costs of this action, attorneys' fees, and treble damages.

## COUNT FOUR – COMMON LAW UNFAIR COMPETITION

97.     The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

98.     Defendants have engaged in unfair competition by intentionally using Guidecraft's registered KITCHEN HELPER® trademark to hold out their products as those of Guidecraft, or as affiliated with, sponsored by, or otherwise connected with Guidecraft. Guidecraft has established that trademark honestly and through a long course of fair dealing with the public.

99.     Defendants' actions have been willful as evidenced by their plan over a period of months to divert business from Guidecraft.

100.    Defendants' actions have caused actual deceit and fraud upon the public.

101.    Guidecraft has been damaged in an amount to be determined at trial.

## COUNT FIVE – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

102.   The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

103.   Defendants are illegally competing with Guidecraft and interfering with its prospective business relations.

104.   Defendants' actions involving the sale of children's stools using Guidecraft's registered KITCHEN HELPER® trademark and copyright protected children's stool designs were calculated to cause damage to Guidecraft's business.

105.   Defendants have interfered with Guidecraft's business relationships, prospective business relationships, and ability to conduct business.

106.   As a result of Defendants' actions, Guidecraft has been damaged in an amount to be proven at trial.

## COUNT SIX - UNJUST ENRICHMENT

107.   The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

108.   Defendants organized and initiated a competing business to pass-off products as those of Guidecraft.

109.   Defendants misappropriated the brand and appearance of Guidecraft's products to divert business from Guidecraft.

110.   As a result of the conduct described hereinabove, Defendants have been and will continue to be unjustly enriched at the expense and to the detriment of Guidecraft.

111.   By their unlawful actions, Defendants have been unjustly enriched and thereby damaged Guidecraft in an amount to be proven at trial.

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

## COUNT SEVEN – NEW YORK TRADEMARK LAW
### (N.Y. Gen. Bus. Law § 360 et seq.)

112.    The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth herein.

113.    Guidecraft's registered KITCHEN HELPER® trademark has become famous in the State of New York through its extensive use with Guidecraft children's stools.

114.    Defendants willfully intended to trade on Guidecraft's reputation or to cause infringement or dilution of Guidecraft's registered KITCHEN HELPER® trademark by selling knock-off versions of Guidecraft's well known children's stools in connection with Guidecraft's KITCHEN HELPER® mark.

115.    Guidecraft is entitled to an injunction to restrain Defendants' manufacture, use, display or sale of its infringing products and to Defendants' profits derived from and all damages suffered by reason of such wrongful manufacture, use, display or sale.

## JURY DEMAND

116.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Grant of a permanent injunction enjoining and restraining Defendant and its officers, agents, servants, employees, owners, representatives, and attorneys, and all those in active concert of participation with them, from:

1.    Selling any products bearing and offering any services utilizing Plaintiff's Intellectual Property, or any variations thereof, in or as part of any business, service or commercial activity;

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

2. Using Plaintiff's Intellectual Property or any variations thereof, in or as part of any business, service or commercial activity;

3. Using Plaintiff's Intellectual Property, or any other identical or similar mark, trade dress or design in relation to any products or services related to toys and children's furniture or in any manner likely to cause confusion, mistake or deception;

4. Filing or pursuing any application for registration of Plaintiff's Intellectual Property as a trademark, service mark, trade dress or patented design in any jurisdiction in the U.S.;

5. Offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that Defendant's merchandise in any way originates with, is sanctioned by, or is affiliated with Plaintiff;

6. Otherwise competing unfairly with Plaintiff;

7. Engaging in further acts of misrepresentation regarding Plaintiff or Plaintiff's goods;

8. Engaging in further acts infringing Plaintiff's rights under New York law;

B. Directing Defendant to:

1. Notify all customers, sellers, distributors, suppliers, manufactures, advertisers, and other persons involved in Defendant's offer of, or attempt to offer, goods under and using Plaintiff's Intellectual Property, that Plaintiff's Intellectual Property is owned and controlled exclusively by and for the benefit of Plaintiff;

2. Deliver to Plaintiff to be destroyed all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendant's possession or control and bearing and/or utilizing Plaintiff's Intellectual Property (or any other name, or other designation, description, or representation that violates 15 U.S.C. § 1125(a)) );

3. Within ten (10) days of judgment, take all steps necessary to remove from Defendant's place(s) of business and website(s), all references to Plaintiff's Intellectual Property, including but not limited to the offering for sale of products that infringe the same.

C. Ordering an accounting by Defendant of all revenues and profits derived from the providing of goods through the unauthorized use of Plaintiff's Intellectual Property;

D. Ordering Defendant to account for and pay over to Plaintiff any and all revenues and profits derived by it and all damages sustained by Plaintiff by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled pursuant Section 35 of the Lanham Act, 15 U.S.C. §1117, as well as 35 U.S.C. §§ 284 and 289, and all further applicable law;

E. Awarding Plaintiff Defendant's profits, awarding an amount equal to three times Plaintiff's actual damages, and awarding Plaintiff the costs of this action along with Plaintiff's reasonable attorneys' fees;

F. That each such award of damages be enhanced to the maximum available for each infringement in view of each of Defendant's willful infringements of Plaintiff's rights;

G. That Plaintiff be awarded punitive or exemplary damages under New York law because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

H.     That Plaintiff recover the costs of this action including its expenses and reasonable attorneys' fees pursuant to 15 U.S.C. §1117, 35 U.S.C. § 285 and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, which make this an exceptional case warranting such an award;

I.     That Plaintiff be awarded pre-judgment and post-judgment interest;

J.     Enter an order for Judgment in favor of Plaintiff and against Defendant on each and every Claim of this Complaint, including by granting the following relief against Defendant:

1. That Defendant be adjudged to have engaged in federal unfair competition and trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125 and unfair competition and trademark infringement under the common law and statutory laws of the State of New York;

2. That Defendant be adjudged to have infringed Plaintiff's mark and trade dress by the acts complained of herein;

3. Requiring that Defendant, within thirty (30) days after service of notice of the entry of judgment, or an injunction pursuant thereto, file with the Court and serve on Plaintiff's counsel a written report under oath setting forth in detail the manner in which Defendant has complied with the Court's order;

4. Awarding to Plaintiff such other and further relief as the Court may deem just and proper or otherwise provided by law.

K.     Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  Walden, New York
        June _____, 2019

_____
Kelly A. Pressler, Esq. (KP0511)
Jacobowitz & Gubits, LLP
158 Orange Avenue
Walden, New York 12586
Telephone: (845) 778-2121
kap@jacobowitz.com
*Counsel for Guidecraft, Inc.*

CORPORATE VERIFICATION

STATE OF NEW YORK          )

                                                    ss:

COUNTY OF ORANGE      )

GARY BILEZIKIAN, being duly sworn, says:

I am a member of GUIDECRAFT, INC., plaintiff corporation in the action herein.

I have read the annexed Complaint dated June _____, 2019, know the contents thereof and the same are true to my knowledge, except those matters therein which are to be alleged on information and belief, and as to those matters I believe them to be true.

_____
GARY BILEZIKIAN

Sworn to before me this _11th_
day of June, 2019

_____
Notary Public

PATRICIA J. MARSH
Notary Public, State of New York
Qualified in Rockland County
No. 4601080
Commission Expires May 31, 2022

/var/folders/lz/gxc5r88s0d772c36klsf2t3w0000gn/T/com.microsoft.Outlook/Outlook Temp/1N9357102-Complaint in SDNY.DOCX

# Exhibit (D)



Gary P. Seligman
202.719.3587
gseligman@wileyrein.com

Matthew W. Beato
202.719.7518
mbeato@wileyrein.com

September 6, 2019                                        **VIA EMAIL**

Mr. Jacob Weiss
President
OJCommerce.com
1700 Northwest 64th Street
Suite 460
Fort Lauderdale, FL 33309

Re:      Insured:        OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports
         Insurer:        Certain Underwriters at Lloyd's, London, Syndicates 2623/623
                         ("Beazley")
         Policy No.:     W20D68180201 ("Policy")
         Policy Period:  November 11, 2018 to November 11, 2019
         Matter:         *Guidecraft, Inc. v. OJCommerce LLC*, 7:19-cv-05529 (S.D.N.Y.)
         Claim No.:      BEAZL100005000019

Dear Mr. Weiss:

As you know, we represent Beazley in connection with the above-referenced matter.  Further
to our July 25, 2019 e-mail acknowledging receipt of the notice of the above-referenced
proceeding (the "Litigation"), our call with you on July 26, 2019, and our communications on
July 31, 2019 and August 28, 2019, we write to provide you with Beazley's preliminary
assessment of coverage for the Litigation under the Policy.  As explained below, Beazley has
determined that the Litigation constitutes a Claim potentially triggering coverage under the
Policy's Media Liability Insuring Agreement.  Upon satisfaction of the applicable retention,
Beazley will pay Claims Expenses incurred in defense of the Litigation on behalf of the Insureds
subject to the reservation of rights set forth below.

I.       **The Litigation**

The complaint in the Litigation was filed on June 13, 2019 by Guidecraft, Inc. ("Guidecraft").
The complaint names as defendants OJCommerce LLC, OJCommerce.com Inc., and Naomi
Home, Inc.  The complaint alleges that the defendants used certain trademarks and designs
belonging to Guidecraft without authorization.  Specifically, Guidecraft asserts
OJCommerce.com Inc. and OJCommerce LLC were, from 2012 to 2018, resellers of Guidecraft
products, including the "Kitchen Helper," Step-Up, and High-Rise Step-Up children's stools.  The
complaint asserts that the defendants began to develop, market, and sell "knock-off, infringing
versions of these products."  Compl. ¶ 43.  The complaint asserts that Guidecraft is the owner

September 6, 2019
Page 2

of the registered "Kitchen Helper" mark and avers that the defendants' use of Guidecraft's trademark constitutes trademark infringement.

The complaint asserts seven counts.  Count I is brought for trademark infringement under the Lanham Act.  Count II is brought for unfair competition under the Lanham Act.  Count III is brought for trade dress infringement under the Lanham Act.  Count IV is brought for common law unfair competition under the Lanham Act.  Count V is brought for tortious interference with business relations and Count VI is brought for unjust enrichment.  Finally, Count VII is brought for trademark infringement under New York law.

Please understand that by describing the allegations made by Guidecraft, Beazley does not mean to suggest that those allegations have merit.

## II.   Coverage Discussion

### A.   Applicable Insuring Agreement

Beazley issued Beazley Breach Response Policy No. W20D68180201 to OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports for the Policy Period from November 11, 2018 to November 11, 2019.  *See* Policy, Declarations, Page 2 of 4.  Under the Media Liability Insuring Agreement, the Policy provides a Limit of Liability of $3 million each Claim subject to a Retention of $25,000, each inclusive of Claims Expenses.  *Id.*, Page 3 of 4.

Under the Media Liability Insuring Agreement, the Policy affords specified coverage for Damages and Claims Expenses which the Insured is legally obligated to pay because of any Claim first made against any Insured during the Policy Period for Media Liability.  *See* Policy, Form F00653, at 2 of 23.  The named Insured Organization on the Policy is "OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports."  *See* Policy, Declarations, Page 2 of 4.  At this time, Beazley will assume that the three defendants in the Litigation are each Insureds under the Policy.  Beazley reserves all rights to the extent that it later learns of facts that demonstrate that any defendant is not an Insured.

As defined by the Policy, a Claim includes a written demand received by any Insured for money or services, including the service of a suit.  *See* Policy, Endorsement E11204.  We understand that the defendants received a copy of the complaint in the litigation by mail, although we recognize that the parties dispute whether service of suit was proper.  As a result, Beazley has determined that the Litigation constitutes a Claim made during the Policy Period.

As noted, the Policy provides specified coverage for Media Liability.  "Media Liability" includes one of eleven specific acts committed in the course of creating, displaying, broadcasting,

September 6, 2019
Page 3

disseminating, or releasing Media Material to the public, including "infringement of domain name, trademark, trade name, trade dress, logo, title, metatag, or slogan, service mark or service name," and unfair competition, if alleged in conjunction with any of those acts. *See* Policy, Form F00653, at 10 of 23. Media Material includes "any information, including words, sounds, numbers, images or graphics, but will not include computer software or the actual goods, products or services described, illustrated or displayed in such Media Material." *Id.*

Therefore, while the Media Liability insuring agreement provides specified coverage for alleged trademark or trade dress infringement in connection with the display of advertisements of goods or products, it does not provide coverage for alleged trademark or trade dress infringement due to the design of the actual goods or products themselves. The complaint in the Litigation alleges that the defendants have committed infringement both in connection with the actual design of the defendants' products, as well as the advertising of those products. In addition, the complaint in the Litigation includes allegations of tortious interference with business relations and unjust enrichment, which are not enumerated acts in the Media Liability insuring agreement. Therefore, in light of the allegations in the Litigation, coverage will be limited in the event of any judgment or settlement, and the Policy will not afford coverage for amounts attributable to alleged infringement due to the sale of allegedly infringing products, to alleged infringement due to the display of the allegedly infringing product on the Insured's websites or Amazon, or to Counts V and VI of the complaint.

### B.    Potentially Applicable Terms & Conditions

In light of the potential application of the Media Liability insuring agreement, Beazley will pay Claims Expenses and covered Damages incurred by the Insureds in connection with the Litigation in excess of the Retention. However, certain terms and conditions of the Policy may serve to limit coverage, and Beazley wishes to bring these to your attention.

*First*, the Policy provides indemnity coverage only for Damages, as that term is defined in the Policy. Damages do not include "future profits, restitution, disgorgement of unjust enrichment or profits by an Insured, or the costs of complying with orders granting injunctive or equitable relief," or punitive or exemplary damages (subject to certain exceptions). *See* Policy, Form F00653, at 5 of 23. The complaint in the Litigation seeks punitive damages and disgorgement of unjust enrichment. Indemnity coverage will not be afforded for any amounts that do not constitute Damages; accordingly, an allocation may be necessary in the event of any judgment or settlement.

*Second*, with respect to the Media Liability Insuring Agreement, the Policy provides that coverage does not apply to any Loss arising out of:

September 6, 2019
Page 4

1.  any contractual liability or obligation; but this exclusion will not apply to a Claim for misappropriation of ideas under implied contract;

2.  the actual or alleged obligation to make licensing fee or royalty payments;

3.  any costs or expenses incurred or to be incurred by the Insured or others for the reprinting, reposting, recall, removal or disposal of any Media Material or any other information, content or media, including any media or products containing such Media Material, information, content or media;

4.  any Claim brought by or on behalf of any intellectual property licensing bodies or organizations;

5.  the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services, cost guarantees, cost representations, contract price estimates, or the failure of any goods or services to conform with any represented quality or performance;

6.  any actual or alleged gambling, contest, lottery, promotional game or other game of chance; or

7.  any Claim made by or on behalf of any independent contractor, joint venturer or venture partner arising out of or resulting from disputes over ownership of rights in Media Material or services provided by such independent contractor, joint venturer or venture partner[.]

Policy, Form F00653, at 16 of 23.  Beazley notes that the complaint in the Litigation, among other things, requests that the defendants deliver all "products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendant's possession or control and bearing and/or utilizing Plaintiff's Intellectual Property (or any other name, or other designation, description or representation that violates 15 U.S.C. § 1125(a))."  Accordingly, Beazley reserves all rights under each of these provisions.

*Third*, the Policy provides that there is no coverage (subject to certain exceptions not relevant here) for any Loss arising out of any actual or alleged false, deceptive or unfair trade practices, antitrust violation, restraint of trade, unfair competition (except as provided in the Media Liability insuring agreement), or false or deceptive or misleading advertising or violation of the Sherman Antitrust Act, the Clayton Act, or the Robinson-Patman Act.  *See* Policy, Form F00653, at 13 of 23.  In light of the allegations in the complaint regarding false or deceptive or misleading advertising, Beazley reserves all rights under this provision.

September 6, 2019
Page 5

*Fourth*, the Policy provides that there is no coverage for any Loss arising out of any criminal, dishonest, fraudulent, or malicious act or omission, or intentional or knowing violation of the law. *See* Policy, Form F00653, at 14 of 23. This exclusion provides that only acts, errors, omissions or knowledge of a member of the Control Group will be imputed to the Insured Organization, and that the exclusion will not apply to:

1. Claims Expenses incurred in defending any Claim alleging the foregoing until there is a final non-appealable adjudication establishing such conduct; or

2. with respect to a natural person Insured, if such Insured did not personally commit, participate in or know about any act, error, omission, incident or event giving rise to such Claim or Loss.

*Id*. In light of the allegations that the defendants engaged in "egregious, malicious, and tortious conduct," among other allegations, Beazley must respectfully reserve its rights under this exclusion.

*Fifth,* the Policy includes the following subrogation provision:

> If any payment is made under this Policy and there is available to the Underwriters any of the Insured's rights of recovery against any other party, then the Underwriters will maintain all such rights of recovery. The Insured will do whatever is reasonably necessary to secure such rights and will not do anything after an incident or event giving rise to a Claim or Loss to prejudice such rights. If the Insured has waived its right to subrogate against a third party through written agreement made before an incident or event giving rise to a Claim or Loss has occurred, then the Underwriters waive their rights to subrogation against such third party. Any recoveries will be applied first to subrogation expenses, second to Loss paid by the Underwriters, and lastly to the Retention. Any additional amounts recovered will be paid to the Named Insured.

Policy, Form F00653, at 21 of 23. Beazley asks that the Insureds please do nothing to impair its potential subrogation rights.

*Sixth*, the Policy provides that "[t]he insurance under this Policy shall apply in excess of . . . any other valid and collectible insurance available to any Insured . . . unless such other insurance is written only as specific excess insurance over this Policy." Policy, Endorsement E11204, at 3 of 3. Please advise whether the Insureds have available any other insurance potentially applicable to the Litigation, and whether the Insureds have tendered this matter to such other carrier(s). If such other insurance exists, Beazley requests that the Insureds please tender this matter to

September 6, 2019
Page 6

such other carrier(s) as soon as possible (if they have not done so already) and provide copies of any correspondence to or from any such carrier(s).

## C. Claims Expenses and Request for Cooperation

Under the Policy, Beazley has the right and duty to defend any covered Claim. Policy, Form F00653, at 20 of 23. The Policy provides that "Defense counsel will be mutually agreed by the Named Insured and [Beazley] but, in the absence of such agreement, [Beazley's] decision will be final." *Id.* As you know, Beazley is amenable to Velvel Freedman continuing as defense counsel subject to confirmation of his new hourly rate (which we understand will be between $400 and $500 per hour) and a budget of $10,000 to develop a strategy for the responsive pleading stage. Beazley will evaluate whether it makes sense for Mr. Friedman to continue as defense counsel after the initial report and budget described in the attached Defense Counsel Guidelines are submitted to Beazley. If at any time you would like a recommendation from Beazley as to alternative counsel, please let us know.

Please also keep in mind that the Policy specifies that no Insured shall admit liability, make any payment, assume any obligation, incur any expenses, enter into any settlement, stipulate to any judgment or award or dispose of any Claim without Beazley's prior written consent. Policy, Form F00653, at 20 of 23.

## III. Conclusion

Beazley looks forward to working with you as this matter progresses. So that Beazley may monitor this matter, Beazley asks that you please keep us closely apprised of any developments with respect to the Litigation.

In the interim, please understand that Beazley continues to reserve all of its rights under the Policy and at law, including the right to rely on additional provisions in the Policy as appropriate.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact us.

September 6, 2019
Page 7

Sincerely,

Gary P. Seligman
Matthew W. Beato

Enclosure (Beazley Defense Counsel Guidelines)

cc:     Kenneth Suh, Beazley
        Stephanie Gammauta, Keyes Coverage



# Defense Counsel Guidelines

Beazley has developed the following guidelines to govern its relationship with defense counsel and to facilitate the efficient and cost-effective defense of litigation against its insureds.  These guidelines are a means of ensuring that Beazley receives the information it needs to promptly evaluate claims on their merits and to promote a close working partnership with insureds and their counsel in the defense and resolution of claims.

Nothing contained herein is intended to nor shall restrict defense counsel's exercise of independent professional judgment in rendering legal services to an insured.  To the extent that these guidelines in any way contradict regulations, statutes or professional standards in any applicable jurisdiction in which a claim involving a Beazley insured is pending, defense counsel is expected to comply with the applicable regulations, statutes, and/or professional standards.

## 1. Acknowledgement, Conflict Check and Engagement Letter

Within 2 business days of receiving Beazley's instruction to act, please:  (i) confirm to Beazley in writing (with a copy to the insured), that you have conducted a conflict check and are able to accept the assignment; and (ii) provide Beazley (with a copy to the insured), with an engagement letter detailing the scope of your work, the names of the attorneys who will be handling the matter, and each attorney's hourly rate.

## 2. Contact with Insured

Within 2 business days of receiving instructions to act, please make contact with the insured by telephone, facsimile or e-mail.

## 3. Staffing Philosophy

Beazley shall approve one partner to have primary responsibility for each case in which services are requested.  That partner shall maintain the lead role in the case and will closely supervise the work performed by any other attorneys or staff authorized to work on the matter.

Each case should be staffed efficiently, striking a balance between the experience a partner brings and the advantages of having certain tasks performed by a junior attorney or paralegal.

## 4. Reporting

The use of e-mail for the submission of reports is encouraged.

**Initial Report**
Within 30 days of receipt of instructions to act, please provide an initial report to Beazley, with a copy to the insured.  All reports discussing the merits of the claim, litigation strategy, or matters relating thereto, shall be treated as "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT" and captioned as such.  A sample of Beazley's preferred reporting format is attached hereto as Appendix A.



The initial report shall contain the following:

4.1   An identification of the claimant(s) and information about claimant(s) and their counsel;
4.2   A description of the underlying facts, including the dates of the insured's relevant business relationship(s) and a chronology of relevant events;
4.3   A description of the damages or other relief sought;
4.4   An evaluation of the role of any co-defendants;
4.5   Observations regarding the jurisdiction and the judge to whom the case has been assigned;
4.6   An evaluation of the merits of the claim and the defenses available to the insured;
4.7   A preliminary litigation strategy, including:
    4.7.1   Details of each activity you propose (e.g., investigation, motion, discovery, research) and the estimated completion date for each;
    4.7.2   Details of discovery and motions that have been or are likely to be initiated by other parties;
    4.7.3   A discussion of the potential for an early disposition of the case through dispositive motions;
    4.7.4   A discussion of the potential for an early disposition of the case through settlement, including recommendations for arbitration, mediation, or other settlement negotiations;
4.8   An estimate of the likely trial date; and
4.9   A summary of any missing or unknown information relevant to your assessment of liability or damages exposure and the method through which you intend to obtain the information.

### Initial Budget

In connection with the Initial Report, please provide an initial budget detailing the estimated expense for each activity set forth in the litigation strategy. A budget template is attached hereto as Appendix B. This budget should be updated as the case develops to show compliance with the initial terms or modification of those terms, which must be approved by Beazley. Please promptly advise Beazley of any proposed revisions to the budget, with an explanation as to why such revisions are necessary.

### Interim Reports

Please provide an updated status report at least every 90 days (and sooner as developments warrant), to advise of developments or material changes to your initial analysis, litigation plan and to advise of progress against the budget. Additionally, please detail any information that alters or substantially affects prior evaluations of liability, defenses or anticipated damages. Please also include copies of expert reports and summaries of depositions.

If no developments have occurred during the preceding 90 days, please send a brief e-mail or letter to Beazley stating the same, and refrain from preparing a detailed report.

### Trial/Mediation/Arbitration/Settlement Report

If the case is anticipated to proceed to trial, mediation, arbitration, or if there is a substantive settlement opportunity, please provide Beazley, no later than 45 days prior to the scheduled event, with a report outlining: (i) your evaluation and recommended strategy; (ii) the likelihood of an adverse outcome; (iii) the potential verdict or settlement range; and (iv) the recommended settlement value, including apportionment among the parties.



## 5. Requested Documents

Please provide Beazley with drafts of pleadings, motions, expert reports and mediation statements for review at least one week prior to formal filing or service.  Copies of final form pleadings/amended pleadings should also be provided to Beazley after filing.

## 6. Settlement Authority

Any settlement offer or demand should be promptly reported to Beazley along with:  (i) the factual framework in which the demand was received; (ii) the amount of the offer or demand; (iii) your independent assessment as to the advisability of settlement and the settlement range you would recommend; (iv) your recommended response to the demand and (v) information detailing the likely verdict range.

Settlement authority shall be requested from Beazley as far in advance as possible and no offer of settlement shall be accepted or rejected without Beazley's prior consent.  Beazley further requests that the insured not be provided with any indication as to Beazley's views on settlement prior to your receipt of a formal response from Beazley.  Any draft releases or settlement agreements shall be submitted to Beazley for approval prior to settlement.

## 7. Coverage Issues

Fees and costs incurred in connection with defense counsel's provision of advice to the insured regarding insurance coverage do not constitute costs of defense covered under the policy.  Defense counsel shall promptly advise Beazley in the event that it provides such advice to facilitate Beazley's review of fees and costs submitted for coverage.

## 8. Billing

8.1 Hourly Rates and Rate Increases
Hourly rates for legal services must be agreed to in writing before they become effective and will remain in place through the life of a matter, unless otherwise agreed.

8.2 Submission
Please render all statements for services on a monthly basis to the insured, with a copy to Beazley via e-mail.  Beazley will call your attention to any time entries or expenses that do not appear appropriate for payment or are otherwise questionable.

8.3 Format
All statements for services should be consistent with the budget format and should contain:
8.3.1 A heading including:  (i) the caption; (ii) the insured's name; and (iii) the Beazley claim number.
8.3.2 Itemized entries including: (i) the date the work was performed; (ii) the initials of the person providing the service; (iii) a description of the work performed, including the nature, purpose or subject of the work and the activity or project to which it relates; and (iv) the actual time in tenths of an hour. Grouping multiple activities under a single time charge greater then one-tenth of an hour should be avoided.



8.3.3  A summary including: (i) the full name and level of each timekeeper; (ii) their hourly rate; and (iii) the total hours and total amount charged for each timekeeper during the billing period.

8.4  Reimbursable Expenses
The following charges are considered reimbursable, provided they are supported by documentation or invoices containing the itemization of expense by category, cost item, date and invoice number:

8.4.1  Photocopying at cost up to a maximum of ten (10) cents per page. The per-page photocopy rate, the date the copies were made, and the number of copies made should be shown.

8.4.2  Long distance telephone/fax charges at cost.

8.4.3  Reasonable postage costs.

8.4.4  Reasonable travel expenses, including: (i) airline and other means of transportation, the cost of which should not exceed standard coach fares; (ii) reasonable rental car expense; and (iii) mileage for round trips greater than 50 miles and parking.

8.4.5  Actual meal expenditure where appropriate, not to exceed $60 per person daily.

8.4.6  Messenger delivery and air freight/courier expenses if incurred due to circumstances outside your control or agreed to in advance.

8.4.7  Court filing fees, jury fees, and witness fees.

8.4.8  Expenses incurred for the production of specialized litigation exhibits previously agreed to by Beazley.

8.5  Non-Reimbursable Expenses
The following charges, intended to be illustrative and not comprehensive, are considered non-reimbursable:

8.5.1  Time and expense incurred in preparing invoices or responses to billing inquiries.

8.5.2  Time and expense incurred in clearing conflicts or opening or closing files.

8.5.3  Clerical work performed by anyone at the firm, including attorneys and/or paralegals.

8.5.4  Time and expense incurred in familiarizing a new attorney with the matter due to either the internal reassignment of the matter or the departure of an attorney or paralegal (including start-up work for replacement personnel).

8.5.5  Time and expense incurred consulting with other attorneys in the firm, unless sufficient detail of the subject of the communication is set forth to demonstrate its relevance and value.

8.5.6  Time and expense incurred for multiple attorneys' appearances at trial, court appearance, deposition, witness interview or other function, unless previously agreed by Beazley.

8.5.7  Research or other work that your firm prepared for another case. Beazley will, however, reimburse charges for the time spent adapting the research to the current case.

8.5.8  Per-page charges for outgoing or incoming faxes.

8.5.9  Continuing education for any personnel.

8.5.10 Office expenses including, but not limited to, rent, conference rooms, equipment rental, utilities, computer equipment, computer maintenance, software, books, publications, office supplies, refreshments during meetings, local telephone charges, overtime meals or transportation, and non-attorney or non-paralegal staff (e.g., library staff).

8.5.11 Law office staff overtime charges.

8.5.12 Computerized legal research charges for the use of Westlaw, Lexis, or other computerized legal research services or products. Beazley will pay for the time spent researching at the attorney's/paralegal's agreed hourly rate, and



must approve any research project involving over 10 hours of computerized research prior to it being undertaken.

8.6    Disbursements

Beazley shall reimburse pre-approved reasonable disbursements for service by outside vendors at their actual cost.  If necessary, expenses of over $1,000 may be forwarded to Beazley for direct payment.  Disbursements not separately billed should be itemized on your firm's statement with the following information: (i) the name of the vendor; (ii) the date incurred; (iii) a specific description of the expense; and (iv) the invoice number.

8.7    Payment Obligations

Beazley's obligation to pay claims expenses arises only after the insured has satisfied its self-insured retention.  In agreeing to represent a Beazley insured, you acknowledge and agree that the insured's failure to pay for claim expenses (including defense expenses) that are within the applicable self-insured retention, remain the responsibility of the insured and that Beazley will not be called upon to satisfy any such unpaid expenses.  Beazley may also decline to pay or may seek reductions and/or refunds with respect to charges that fail to comply with the requirements set forth herein, and which are not fully explained or documented by the firm after reasonable inquiry.

## 9. File Review

Beazley may conduct file reviews, consistent with the firm's ethical obligations, and in a manner that will not compromise the attorney-client or work product protection accorded to material in the file or communications by and between or among your firm, the insured, and Beazley and its representative.

## 10. Communication

Beazley values open communication with both defense counsel and insureds.  Accordingly, in the event that these guidelines are unclear or do not address a particular issue, please contact Beazley for clarification.

Please indicate your acceptance of these guidelines by signing and returning the attached copy to Beazley.

We hereby agree to abide by these guidelines.

Signed: _____

Date: _____



# Appendix A

Sample Reporting Format

PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT

Address of Recipient

Date of Report
Report #:

Insured:
Claimant(s):
Policy Period:
Indemnity Limit:
Self Insured Retention:
Total Amount Claimed:
Claim Location:
Key Dates:  [e.g. trial, mediation, motion hearing dates]

**Claim Précis:**  Provide brief summary of claim and requested damages.

**Developments:**  Brief outline of key developments since the last report.

**Estimated Maximum Loss**:  Please provide an estimate of the maximum loss to the insured and express the likelihood of this scenario in percentage terms.

### 1. Introduction and Executive Summary
Brief summary of the reason for the report, including any material action required by Beazley or the insured.

### 2. Background Facts
Describe the facts of the claim.  Detail the work performed (or the work that should have been performed) by the insured.  Confirm the status of any proceedings and provide details of venue including the Judge assigned and the jury pool.  Provide the applicable law and forum.

### 3. Allegations Made/Damages Claimed
Summarize the key allegations made and damages claimed by reference to each cause of action.

### 4. Analysis of Liability
Evaluate each cause of action and provide your views on the insured's liability.  Provide information regarding any affirmative defences.  Identify key documents, evidence and/or witnesses and highlight any additional information needed to evaluate the claim. Discuss any bad facts or poor witnesses.



**5. Contributory Negligence/Potential Recovery from Other Defendants or Third-Parties**
Evaluate contributory negligence and potential recovery from other defendants or third-parties.

**6. Quantum and Financial Estimates**
Provide details of the plaintiff's demand, including a discussion of the potential quantum on the basis of the most likely ultimate outcome. Provide an assessment of the realistic worst case and discuss any influencing factors. The use of percentages is helpful in communicating the likelihood of various scenarios.

**7. Administrative Issues**
a) Budget: Provide details of the budget for the case and projected costs through key stages of litigation.
b) Key Dates: Upcoming dates/court timetable
c) Staffing: Identity all partners and associates that are to work on the matter.

**8. Future Strategy**
Detail the future strategy, including, but not limited to: (1) the timing and strategy for any motions; (2) any additional information required to assess the merits of the claim and the manner in which you will endeavour to obtain it; (3) possible settlement strategy and whether settlement should be pursued.

**9. Conclusion and Recommendations**
Highlight any key conclusions drawn from the body of the report. Set forth any recommendations requiring agreement or instructions awaited from Beazley. Confirm recommended timetable for next report.



# Appendix B

Budget Template

Please identify the attorneys involved, their years in practice, their status (e.g., partner or associate) and proposed billing rate.

| DESCRIPTION OF ACTIVITY | TARGET COMPLETION DATE | ESTIMATED ATTORNEY TIME & LEVEL | ESTIMATED COST |
|---|---|---|---|
| Fact Investigation & Development | | | |
| Pleadings or Pre-Answer Motions | | | |
| Written Discovery & Document Production | | | |
| Depositions (break out defense and plaintiff) | | | |
| Experts/Consultants | | | |
| Expert Discovery | | | |
| Attendance at Court Conferences | | | |
| Dispositive Motions | | | |
| Other Motions/Submissions and Court Appearances | | | |
| Other Discovery | | | |
| Settlement/Non-Binding ADR | | | |
| Trial Preparation and Trial Fact Witnesses | | | |
| Expert Witnesses | | | |
| Written Motions/Submissions | | | |
| Other Trial Preparation/Support | | | |
| Trial & Hearing Attendance | | | |
| Communication with Beazley/Insured | | | |
| Other Activities (e.g., communication with opposing counsel, incidental research) | | | |

| EXPENSES | ESTIMATED COST |
|---|---|
| Outside Printing | |
| Online Research | |
| Travel | |
| Court Fees | |
| Subpoena Fees | |
| Witness Fees | |
| Deposition Transcripts | |
| Trial Transcripts | |
| Trial Exhibits | |
| Litigation Support Vendors | |
| Experts | |
| Private Investigator | |
| Arbitrators/Mediators | |
| Local Counsel | |
| Other Professionals | |

# Exhibit (E)



Gary P. Seligman
202.719.3587
gseligman@wileyrein.com

Matthew W. Beato
202.719.7518
mbeato@wileyrein.com

October 23, 2019                                              **VIA EMAIL**

Mr. Jacob Weiss
President
OJCommerce.com
1700 Northwest 64th Street
Suite 460
Fort Lauderdale, FL 33309

Re:    Insured:       OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSportsInsurer:
                      Certain Underwriters at Lloyd's, London, Syndicates 2623/623
                      ("Beazley")
       Policy No.:    W20D68180201 ("2018-19 Policy")
       Policy Period: November 11, 2018 to November 11, 2019
       Matter:        *Guidecraft, Inc. v. OJCommerce LLC*, 7:19-cv-05529 (S.D.N.Y.)
                      (the "Guidecraft SDNY Action")
       Claim No.:     BEAZL100005000019

Dear Mr. Weiss:

As you know, we represent Beazley in connection with the above-referenced matter.  This
letter supplements, and does not supplant, our September 6, 2019 correspondence, which is
incorporated herein by reference.  Due to additional information provided to Beazley since our
September 6, 2019 correspondence, Beazley has, regrettably, concluded that no coverage is
available for the Guidecraft SDNY Action.  The bases for this conclusion are outlined below.

**I.   Additional Factual Background**

On our call on September 12, 2019, Beazley learned for the first time that OJCommerce LLC,
OJCommerce.com Inc., and Naomi Home, Inc. (the "OJCommerce Defendants") had previously
been sued by Guidecraft.  Following our call, Beazley reviewed a copy of that suit.  The suit was
captioned *Guidecraft, Inc. v. OJCommerce, LLC, et al.*, 2:18-cv-1247 (W.D. Pa.) (the "Guidecraft
WDPA Action").  Guidecraft filed the Guidecraft WDPA Action on September 19, 2018.  Based
on a review of the docket, the OJCommerce Defendants each signed waivers of service on
October 11, 2018, meaning that they received the complaint no later than that date.

The original complaint in the Guidecraft WDPA Action makes substantially similar allegations to
those Guidecraft makes in the Guidecraft SDNY Action.  As in the Guidecraft SDNY Action, the
Guidecraft WDPA Action alleges that the OJCommerce Defendants infringed the "Kitchen

October 23, 2019
Page 2

Helper" mark purportedly held by the plaintiff, and that the OJCommerce Defendants sold inferior "knock-off" versions of the Guidecraft "Kitchen Helper," Step-Up, and High-Rise Step-Up children's stools.  Other than a count brought under a New York trademark statute, versions of all of the counts asserted in the Guidecraft SDNY Action were asserted in the Guidecraft WDPA Action.

The Guidecraft WDPA Action was dismissed on June 5, 2019, about one week before the Guidecraft SDNY Action was filed.  The suit was dismissed because the court concluded that the court lacked personal jurisdiction over the OJCommerce Defendants.  The court in the Guidecraft WDPA Action invited Guidecraft to refile the action in the Southern District of New York, which was Guidecraft's stated preferred alternate forum if the case was dismissed on personal jurisdiction grounds.  *See* Guidecraft WDPA Action, ECF No. 36 at 15 ("Plaintiff has ample time to refile the case in the Southern District of New York.").

**II.      Supplemental Coverage Discussion**

Our September 6 correspondence concluded, based on the information then available to Beazley, that the Media Liability Insuring Agreement of the 2018-19 Policy was triggered, such that Beazley had a duty to defend the Guidecraft SDNY Action.  As noted, that insuring agreement provides specified coverage only for Claims first made during the Policy Period.  *See* Policy, Endorsement E11204.  Although the Guidecraft SDNY Action was made during the Policy Period, the Guidecraft WDPA Action was not.  That Claim was necessarily made no later than October 11, 2018, when the OJCommerce Defendants waived service and therefore received a copy of the complaint.

The 2018-19 Policy provides that "Multiple Claims arising from the same or a series of related, repeated or continuing acts, errors, omissions or events will be considered a single Claim for the purposes of this Policy.  All such Claims will be deemed to have been made at the time of the first such Claim."  2018-19 Policy, Form F00653, at Page 4 of 23.  As discussed above, the Guidecraft WDPA Action and the Guidecraft SDNY Action have substantial factual and legal overlap; they are therefore deemed a single Claim under this provision.  Because the first such claim, the Guidecraft WDPA Action, was made before the Policy Period, no coverage is available under the 2018-19 Policy.

Beazley also issued Policy No. W20D68170101 to OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports for the period of November 11, 2017 to November 11, 2018 ("2017-18 Policy").  Although notice was not submitted under the 2017-18 Policy, Beazley has nonetheless considered whether coverage might be available under that policy.  The Website Media Content Liability Insuring Agreement of the 2017-18 Policy provides specified coverage for Claims first made during its Policy Period and reported in writing during the Policy Period or as

October 23, 2019
Page 3

otherwise provided in Section X of the Policy.  Section X of the Policy, as amended by endorsement, provides that:

> If any Claim is made against the Insured, the Insured, upon knowledge of the Control Group, shall forward as soon as practicable to [Beazley] through persons named in Item 9.(a) of the Declarations written notice of such Claim in the form of a telecopy, email or express or certified mail together with every demand, notice, summons or other process received by the Insured or the Insured's representative. In no event shall [Beazley] be given notice of a Claim later than sixty (60) days after the expiration date of the Policy Period[.]

In this case, Beazley was not provided with notice of the Claim within sixty days following expiration of the Policy Period, *i.e.*, by January 10, 2019.  Indeed, no written notice of the Guidecraft WDPA Action was ever provided to Beazley.  For this reason, no coverage is available under the 2017-18 Policy.

**III.   Conclusion**

For the reasons discussed above, Beazley has concluded that it has no defense or indemnity obligation in connection with the Guidecraft SDNY Action.  However, if any Insured has any information that they believe bears on Beazley's coverage determination or that they would like Beazley to consider, please forward it to our attention and Beazley will give it careful consideration.  In the interim, please understand that Beazley continues to reserve all of its rights under the 2018-2019 and 2017-2018 Policies and at law, including the right to rely on additional provisions in the Policies as appropriate, and including as outlined in our correspondence dated September 6, 2019.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact us.

Sincerely,

Gary P. Seligman
Matthew W. Beato

cc:    Kenneth Suh, Beazley
       Stephanie Gammauta, Keyes Coverage

# Exhibit (F)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **THE NOCO COMPANY** ) | |
| 30339 DIAMOND PARKWAY, #102 ) | |
| GLENWILLOW, OHIO 44139 ) | CASE NO: |
| ) | |
| Plaintiff, ) | JUDGE: |
| v. ) | |
| ) | |
| **OJCOMMERCE, LLC** ) | |
| C/O JACOB WEISS, REGISTERED AGENT ) | |
| 11651 INTERCHANGE CIRCLE SOUTH ) | |
| MIRAMAR, FLORIDA 33025 ) | |
| ) | |
| and ) | |
| ) | |
| **OJCOMMERCE.COM, INC.** ) | |
| C/O JACOB WEISS, REGISTERED AGENT ) | |
| 11651 INTERCHANGE CIRCLE SOUTH ) | |
| MIRAMAR, FLORIDA 33025 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT
## (JURY DEMAND ENDORSED HEREIN)

Plaintiff The NOCO Company d/b/a NOCO ("***Plaintiff***") by and through counsel,

and for its Complaint against Defendants OJCommerce, LLC and OJCommerce.com,

Inc. ("***Defendants***"), states as follows:

## INTRODUCTION

1.      Defendants are engaged in the unauthorized sale of products distributed

by, and willfully infringing upon the intellectual property of, Plaintiff. These

unauthorized sales and infringing activities are illegal, have harmed, and will continue

to harm Plaintiff.

## PARTIES

2.      Plaintiff designs, manufactures, and sells battery chargers, portable power devices, and related battery products and accessories (collectively, the "***Products***").

3.      Defendants are selling the Products and using Plaintiff's proprietary intellectual property in connection with such sales without the authority or consent of Plaintiff.

## JURISDICTION/VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1338.

5.      Pursuant to Ohio Revised Code Section 2307.382, this Court has personal jurisdiction over Defendants because Defendants have caused tortious injury in the State of Ohio.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

### *Plaintiff's Business*

7.      Plaintiff sells the Products on its website (https://no.co/), to wholesalers and authorized resellers (each, a "***Reseller***" and together, "***Resellers***"), and through online stores such as Amazon and OJCommerce.

8.      When Plaintiff sells to Resellers it enters into contracts with such sellers ("***Reseller Agreements***").

9.      Resellers may only sell the Products pursuant to a Reseller Agreement.

10.     Plaintiff uses Reseller Agreements in order to promote fair competition between Resellers and to protect its brand, its goodwill, and its valuable intellectual

property, including its proprietary images, designs, and content ("**_Copyrights_**") and the

registered trademarks, including the trademarks NOCO® and NOCO GENIUS®

("**_Trademarks_**").

11.     The Reseller Agreements limit Resellers' use of the Copyrights and

Trademarks to avoid brand dilution, tarnishment, and confusion as to the origin of the

Products. An example of such an agreement is attached as Exhibit A.

12.     The Reseller Agreements only permit sales of the Products to retail

consumers and expressly prohibit bulk sales or sales to wholesalers. _See_ Exh. A.

13.     The Reseller Agreements also specify that any warranties associated with

the Products are only valid when sold by Resellers. _Id._

### **_Defendants Begin Selling the Products Without Authorization_**

14.     At least since May 27, 2018, Plaintiff has been aware, and has so notified

Defendants, that Defendants were selling the Products and using Plaintiff's Copyrights

and Trademarks without authorization and without Plaintiff's consent.

15.     Defendants sell the Products online on www.amazon.com using the

Amazon storefront OJCommerce and on the website www.ojcommerce.com, and

possibly other websites. Examples of Defendants' sales are attached as Exhibits B and

C.

16.     Upon information and belief, Defendants purchase the Products from

Resellers.

17.     Upon information and belief, the Resellers from which Defendants

purchase the Products have Reseller Agreements with Plaintiff.

18.     Upon information and belief, Defendants induce Resellers to sell the Products to Defendants in bulk for the purpose of resale.

19.     Upon information and belief, as of the date of this filing, Defendants continue to violate Plaintiff's contractual and intellectual property rights.

### *Plaintiff Demands Defendants Cease Selling the Products*

20.     On May 29, 2018, undersigned counsel sent a letter informing Defendants that they were, *inter alia*, selling the Products without authorization and that such sales violated Plaintiff's rights in the Copyrights and the Trademarks (the "***Letter***"). The Letter is attached as Exhibit D.

21.     The Letter also put Defendants on notice of Plaintiff's claims, and requested that Defendants cease such conduct immediately.

22.     As of the date of this filing, Defendants have failed to cease selling the Products and continues to violate Plaintiff's rights.

23.     Defendants' continued use of the Copyrights and Trademarks after receiving the Letter willfully infringes on Plaintiff's rights in the Copyrights and Trademarks.

### Count One
### Declaratory Judgment/Injunctive Relief

24.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

25.     An actual and justiciable controversy exists between Plaintiff and Defendants related to whether Defendants have the right to sell the Products without Plaintiff's consent and in violation of Plaintiff's rights in the Trademarks.

26.     The Court, pursuant to O.R.C. § 2721.03 and Fed. R. Civ. P. 57, should declare that Defendants have no right or authorization to sell the Products, or use the Trademarks, as these actions have harmed and continue to harm Plaintiff in an amount to be determined at trial.

27.     The Court should further declare that the Letter gave Defendants actual notice that they were not authorized to use the Trademarks, and that Defendant's continued willfull use violates Plaintiff's rights in the Trademarks.

28.     Such a declaration is proper, pursuant to O.R.C. §§ 2721.03 and 2721.06, because it would "terminate the controversy between the parties" and "remove an uncertainty" with respect to this issue.

29.     Additionally, the Court should enjoin Defendants from any further sales of the Products and use of the Trademarks.

## Count Two
## Unfair Competition

30.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

31.     Defendants' actions, including, but not limited to, its unauthorized sale of the Products and its unauthorized use of the Trademarks constitute unfair competition.

32.     Defendants' actions have damaged Plaintiff in the form of, *inter alia*, lost sales, interference with prospective business relationships, trademark infringement, trademark dilution, tarnishment, and copyright infringement.

33.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**Count Three**
**Tortious Interference with Contract**

34.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

35.     The Reseller Agreements are valid binding contracts between Plaintiff and each Reseller.

36.     At least since receiving the Letter, Defendants have been aware of these contracts and the prohibition against bulk sales to unauthorized resellers.

37.     Despite this knowledge, Defendants induced such Reseller to sell the Products to Defendants in breach of the Reseller Agreement.

38.     Defendants improperly interfered with Plaintiff's contractual relationships with its Resellers.

39.     As a direct and proximate cause of Defendants' interference, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**Count Four**
**Trademark Infringement (15 U.S.C. § 1114)**

40.     Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

41.     Plaintiff is the owner of the Trademarks (e.g. NOCO® and NOCO GENIUS®).

42.     Defendants use the Trademarks in connection with its sale of the Products without Plaintiff's authorization or consent.

43.     Defendants' use of the Trademarks is likely to cause confusion among consumers as to the source and origin of the Products.

44. Plaintiff informed Defendants that their sales of the Products infringed on Plaintiff's rights in the Trademarks.

45. Defendants' continued use of the Trademarks constitutes willful trademark infringement pursuant to 15 U.S.C. § 1114.

46. As a result, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

## Count Five
### Trademark Dilution (15 U.S.C. § 1125)

47. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

48. The Trademarks are well known and distinctive within the battery and chargeable battery industry.

49. Defendants' use of the Trademarks is causing the willful dilution of the Trademarks by blurring and tarnishing the reputation and goodwill associated with the Trademarks in violation of 15 U.S.C. § 1125(c).

50. As a result, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

## Count Six
### Ohio Deceptive Trade Practices (O.R.C. § 4165.02)

51. Plaintiff hereby incorporates each and every preceding paragraph as if fully restated herein.

52. Defendants' unauthorized use of the Trademarks is likely to cause confusion as to the source of the Products in violation of O.R.C. § 4165.02(A)(2).

53. Defendants' unauthorized use of the Trademarks creates the misperception that Defendants and Plaintiff are affiliated, which violates O.R.C. § 4165.02(A)(3).

54. As a result, Plaintiff has suffered damages and will continue to suffer damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. As to Count One, a declaratory judgment declaring that Defendants are unauthorized to sell the Products and is willfully violating Plaintiff's rights in the Trademarks, and permanently enjoin Defendants from any further sales of the Products;

B. As to Count Two, award compensatory damages in an amount to be determined at trial, but in excess of $25,000, as well as attorney fees and costs, disgorge Defendants of the proceeds from its unauthorized sales of the Products, and permanently enjoin Defendants from unfairly competing with Plaintiff by further selling the Products;

C. As to Count Three, award compensatory damages in an amount to be determined at trial, but in excess of $25,000, as well as attorney fees and costs, disgorge Defendants of the proceeds from its unauthorized sales of the Products, and permanently enjoin Defendants from interfering with Plaintiff's contractual relationships with its Resellers by further selling the Products;

D. As to Count Four, pursuant to 15 U.S.C. § 1117(a), award Plaintiff up to three times its actual and compensatory damages to be determined at trial, which exceed $25,000, as well as Plaintiff's attorney fees and costs, disgorge Defendants of all proceeds from its unauthorized sales of the Products, and permanently enjoin Defendants from using, and consequently willfully infringing on, the Trademarks;

E. As to Count Five, pursuant to 15 U.S.C. § 1117(a), award Plaintiff up to three times its actual and compensatory damages to be determined at trial, which exceed $25,000, as well as Plaintiff's attorney fees and costs, disgorge Defendants of all proceeds from its unauthorized sales of the Products, and permanently enjoin Defendants from using, and consequently willfully infringing on, the Trademarks; and

F. As to Count Six, award compensatory damages in an amount to be determined at trial, but in excess of $25,000, as well as attorney fees and costs, disgorge Defendants of their profits from all unauthorized sales of the Products, and permanently enjoin Defendants from selling the Products in violation of O.R.C. § 4165.02.

Respectfully submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*

JON J. PINNEY (0072761)
SEAN P. MALONE (0076353)
DAVID R. POSTERARO (0024661)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114
Phone: 216-696-8700
Fax: 216-621-6536
Email: jjp@kjk.com; spm@kjk.com;
drp@kjk.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Jon J. Pinney*

JON J. PINNEY

# Exhibit (G)



Gary P. Seligman
202.719.3587
gseligman@wileyrein.com

Matthew W. Beato
202.719.7518
mbeato@wileyrein.com

December 31, 2019                                      **VIA EMAIL**

Mr. Sam Hecht
General Counsel & CTO
OJCommerce.com
3076 N. Commerce Parkway
Miramar, FL  33025

|  |  |  |
|---|---|---|
| Re: | Insured: | OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports |
| | Insurer: | Certain Underwriters at Lloyd's, London, Syndicates 2623/623 ("Beazley") |
| | Policy No.: | W20D68180201 ("2018-19 Policy") |
| | | W20D68170101 ("2017-18 Policy") |
| | Matter: | *Noco Co. v. OJCommerce LLC, et al.*, 7:19-cv-05529 (S.D.N.Y.) (the "Noco Action") |
| | Claim No.: | BEAZL100005024789 |

Dear Mr. Hecht:

As you know, we represent Beazley in connection with the above-referenced matter.  After reviewing the materials that you have provided concerning the Noco Action, Beazley has, regrettably, concluded that no coverage appears to be available for the Noco Action.  The bases for this conclusion are outlined below.

**I.   Factual Background**

The Noco Action was filed on October 2, 2019 against OJCommerce LLC and OJCommerce.com Inc. (together, "OJCommerce").  In the complaint in the Noco Action (the "Complaint"), Noco alleges that OJCommerce infringed on Noco's intellectual property rights by selling certain of Noco's products without Noco's consent.

Noco alleges that on May 29, 2018, counsel for Noco sent a letter putting OJCommerce on notice of the claims asserted in the lawsuit, and that OJCommerce continued to violate Noco's intellectual property rights.  A copy of the May 29, 2018 letter (the "Demand Letter") was attached to the Complaint.  The Demand Letter demands that Noco either (a) confirm that it will abide by Noco's minimum advertised priced policy, or (b) sign a settlement agreement.  The settlement agreement would have required OJCommerce to confirm that it "listed NOCO PRODUCTS for sale and infringed upon the NOCO IP," and that to the extent OJCommerce further sold Noco products, OJCommerce would reimburse Noco for Noco's costs to enforce

Mr. Sam Hecht
December 31, 2019
Page 2

the settlement agreement.  The Demand Letter asserts that failure to elect either option "may result in additional legal action."

Beazley first received a copy of the Complaint filed in the Noco Action on December 2, 2019. Beazley did not learn of the Demand Letter sent by Noco until it reviewed the docket in the Noco Action after this notice was provided.

## II.  Coverage Discussion

The Media Liability Insuring Agreement of the 2018-19 Policy provides specified coverage for Claims first made against any Insured during the November 11, 2018 to November 11, 2019 Policy Period for Media Liability.[1]  The term Claim includes "a written demand received by any Insured for money or services, or any nonmonetary or injunctive relief, including the service of a suit or institution of arbitration proceedings."  *See* 2018-19 Policy, Definition of "Claim," as amended by Endorsement E11204.

The Demand Letter is a written demand for money, services, or nonmonetary or injunctive relief.  The Demand Letter required that OJCommerce either sign a settlement agreement admitting violations of the law and providing for the payment of money to the extent that it further sold further Noco products, or that OJCommerce would abide by Noco's minimum advertised priced policy when selling those products.  Given that the Demand Letter appears to have been sent by email and certified mail, we assume that the Demand Letter was received by any Insured, and this coverage correspondence is drafted based upon that assumption.  If that assumption is not correct, please let us know immediately.

The Noco Action, a civil lawsuit, is also a Claim.

The 2018-19 Policy provides that "Multiple Claims arising from the same or a series of related, repeated or continuing acts, errors, omissions or events will be considered a single Claim for the purposes of this Policy.  All such Claims will be deemed to have been made at the time of the first such Claim."  2018-19 Policy, Form F00653, at Page 4 of 23.  The Demand Letter and the Noco Action have substantial factual and legal overlap; they are therefore deemed a single Claim under this provision.  Because the first such Claim, the Demand Letter, was made before the Policy Period, no coverage appears to be available under the 2018-19 Policy.

Beazley also issued the 2017-18 Policy to OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports for the period of November 11, 2017 to November 11, 2018.  The Website Media

---

[1]    Beazley has concluded that the remaining insuring agreements of the Policy, which do not provide specified coverage for trademark infringement, are facially inapplicable.  If you or any Insured would like additional information in this regard, please let us know.

Mr. Sam Hecht
December 31, 2019
Page 3

Content Liability Insuring Agreement of the 2017-18 Policy provides specified coverage for Claims first made during its Policy Period and reported in writing during the Policy Period or as otherwise provided in Section X of the Policy.  Section X of the Policy, as amended by endorsement, provides that:

> If any Claim is made against the Insured, the Insured, upon knowledge of the Control Group, shall forward as soon as practicable to [Beazley] through persons named in Item 9.(a) of the Declarations written notice of such Claim in the form of a telecopy, email or express or certified mail together with every demand, notice, summons or other process received by the Insured or the Insured's representative.  In no event shall [Beazley] be given notice of a Claim later than sixty (60) days after the expiration date of the Policy Period[.]

In this case, Beazley was not provided with notice of the Claim within sixty days following expiration of the Policy Period, *i.e.*, by January 10, 2019.  Indeed, no written notice of the Demand Letter was ever provided to Beazley.  For this reason, no coverage is available under the 2017-18 Policy.

**III.**   **Conclusion**

If any Insured has any information that they believe bears on Beazley's coverage determination or that they would like Beazley to consider, please forward it to our attention and Beazley will give it careful consideration.  In the interim, please understand that Beazley continues to reserve all of its rights under the 2018-19 and 2017-18 Policies and at law, including the right to rely on additional provisions in the Policies as appropriate.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact us.

Sincerely,

Gary P. Seligman
Matthew W. Beato

cc:    Kenneth Suh, Beazley
       Stephanie Gammauta, Keyes Coverage
       Ryan Garzon, Keyes Coverage
       Jacob Weiss, OJ Commerce