**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

OJ COMMERCE LLC,                                              Case No. 0:20-cv-60214-WPD
     *Plaintiff*,                                            Civil Division -Dimitrouleas/Snow
-vs-

BEAZLEY USA SERVICES, INC.
     *Defendant*
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                    3

**INTRODUCTION**                                                            5

**FACTUAL BACKGROUND**                                                      6

**PROCEDURAL BACKGROUND**                                                   8

**ARGUMENT**                                                                9

    I. Legal Standard for Summary Judgment.                               9

    II. Florida law applies to the Policies.                              10

    III. The NOCO Letter was not a "Claim" according to the Policies and the Law.    12

    IV. The NOCO Letter and the NOCO Complaint are not a "Single  Claim" under the Policies, because the NOCO Letter was not a "Claim" at all.    15

    V. Plaintiff's Claim as to the NOCO Action fell within the terms of Media Liability coverage, and thus should be covered by Defendant.    16

    VI. Defendant's denial of coverage based on its new-found contention that it was not notified of the NOCO Action in the time-frame required by the 2018-19 Policy  should be rejected, because (a) the notification was in fact timely; and (b) Defendant is estopped from denying coverage based on that contention as its delay in informing Plaintiff of that alleged basis prejudiced and was detrimental to Plaintiff.    18

    VII. All of Defendant's affirmative defenses must be dismissed.        21

**CONCLUSION**                                                             23

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Royal Surplus Lines Ins. Co.,* 2006 WL 2038643 (Bankr. S.D. Fla. June 5, 2006)12, 15

*Bank of Brewton v. Travelers Co.,* 777 F.3d 1339 (11th Cir. 2015)................................................ 9

*Barnhardt v. Hudson Valley Dist. Coun.,* 494 N.Y.S.2d 667 (N.Y. App. Div. 1985)................. 13

*Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So.2d 810 (Fla. 1st DCA 1985)............... 17

*Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.,* 517 N.W.2d 888 (Minn. 1994)......... 14

*Clarendon Nat. Ins. Co. v. Muller,* 237 Fed. Appx. 451 (11th Cir. 2007).................................... 12

*Clarendon Nat'l Ins. Co. v. Massari,* No. 8:05CV1282T-26MSS, 2006 WL 3422083 (M.D. Fla. Nov. 2, 2006).................................................................................................................... 15

*Club Madonna, Inc. v. City of Miami Beach,* 2015 WL 5559894 (S.D. Fla. Sept. 22, 2015) ...... 11

*Colony Ins. Co. v. G & E Tires & Service, Inc.,* 777 So.2d 1034 (Fla. 1st DCA 2000).............. 17

*Companion Prop. & Cas. Ins. Co. v. Category 5 Mgmt. Group, LLC,* 189 So. 3d 905 (Fla. 1st DCA 2016)............................................................................................................................. 22

*Cornette v. I.C. Sys., Inc.,* 280 F. Supp. 3d 1362 (S.D. Fla. 2017)................................................. 9

*Crown Life Ins. Co. v. McBride,* 517 So. 2d 660 (Fla. 1987) ...................................................... 20

*Dickson v. Economy Premier Assur. Co.,* 36 So.3d 789 (Fla. 5th DCA 2010) ..................... 10, 14

*Ellis v. England,* 432 F.3d 1321 (11th Cir. 2005)......................................................................... 9

*Evanston Ins. Co. v. Security Assur. Co.,* 715 F.Supp. 1405 (N.D. Ill. 1989) ............................ 15

*F.D.I.C. v. Booth,* 82 F.3d 670 (5th Cir. 1996)............................................................................ 12

*Garcia v. Federal Ins. Co.,* 969 So.2d 288 (Fla. 2007) .............................................................. 14

*Giles v. St. Paul Fire & Marine Ins. Co.,* 404 N.Y.S.2d 190 (N.Y. App. Div. 1978)................. 15

*Gulf Ins. Co. v. Dolan, Fertig & Curtis,* 433 So. 2d 512 (Fla. 1983) .......................................... 20

*Inetianbor v. CashCall, Inc.,* 2015 WL 11438192 (S.D. Fla. Dec. 8, 2015) .............................. 11

*Jewelry Repair Enters., Inc. v. Somn Le Enters., Inc.,* Case No. 15-CV-81622, 2016 WL 8739605 (S.D. Fla. Apr. 1, 2016)........................................................................................... 11

*Klaesen Bros., Inc. v. Harbor Ins. Co.,* 410 So.2d 611 (Fla. 4th DCA 1982) ............................ 17

*Lavanant v. General Accident Ins. Co.,* 584 N.Y.S.2d 744 (N.Y. 1992).............................. 10, 14

*Mann v. Taser Int'l, Inc.,* 588 F.3d 1291 (11th Cir. 2009) .......................................................... 11

*Marcus v. Guardian Life Ins. Co. of Am.,* 13-81055-CIV, 2014 WL 12279515 (S.D. Fla. Mar. 24, 2014)................................................................................................................................. 22

*Montgomery v. Aetna Casualty & Surety Co.,* 898 F.2d 1537 (11th Cir. 1990).......................... 13

*Morette Co. v. S.-Owners Ins. Co.,* 301 F. Supp. 3d 1175 (N.D. Fla. 2017) .............................. 22

*National Union Fire Ins. Co. v. Lenox Liquors, Inc.,* 358 So.2d 533 (Fla. 1977)...................... 17

*National Union Fire Ins. v. Bartolazo,* 27 F.3d 518 (11th Cir. 1994) .................................. 12, 16

*O'Brien & Wolf, L.L.P. v. Liberty Ins. Underwriters, Inc.,* CIV. 11-3748 JNE/SER, 2012 WL 3156802 (D. Minn. Aug. 3, 2012).......................................................................................... 14

*Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pitts.,* 734 F. Supp. 2d 1304 (S.D. Fla. 2010)10, 14

*Ramey v. Interstate Fire & Cas. Co.,* 32 F. Supp. 3d 1199 (S.D. Fla. 2013) .............................. 13

*Reuter v. Lancet Indemnity Risk Retention Group, Inc.,* 262 F.Supp.3d 1341 (S.D. Fla. 2017) .. 13

*Seasons Hospice & Palliative Care of S. Fla. V. Azar,* 2020 WL 5848769 (S.D. Fla. Oct. 1,

2020)..................................................................................................................... 18

*Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 268 So.2d 560 (Fla. 4th DCA 1972).... 20

*Sport Rock Intern. Inc. v. American Cas. Co. of Reading, PA*, 65 A.D.3d 12 (1st Dep't 2009) .. 18

*State Farm Fire and Cas. Co. v. Edgecumbe*, 471 So.2d 209 (Fla. 1st DCA 1985) ................... 17

*State Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So.2d 1184 (Fla. 1st DCA 1981)........................................................................................................................ 17

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998) ............................................................. 10

*Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018).................................................................................................................. 10, 11

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528 (Fla. 2005) ............................. 13

*Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308 (S.D. Fla. 2015) ............... 23

*Tree Top Inc. v. Starr Indem. & Liab. Co.,* 280 F. Supp. 3d 1206 (E.D. Wash. 2017) ............... 13

*Tropical Park, Inc., v. United States Fidelity and Guaranty Co.*, 357 So.2d 253 (Fla. 3rd DCA 1978)..................................................................................................................... 17, 18

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla. 2007) .................................................. 13

*Walker v. Darby*, 911 F.2d 1573 (11th Cir. 1990) ...................................................................... 10

## Statutes

15 U.S.C. § 1114 ...................................................................................................................... 17

15 U.S.C. § 1125 ...................................................................................................................... 17

Fla. Stat. § 627.426(2) (2016) ................................................................................................. 20

Fla. Stat. § 627.428, ................................................................................................................... 8

Fla. Stat. §§ 626.913 *et seq.* .................................................................................................. 10

Ohio Revised Code § 1923.06 ................................................................................................. 19

Ohio Revised Code § 4165.02 .............................................................................................. 7, 17

## Rules

Fed. R. Civ. P. 11(b) ................................................................................................................ 23

Fed. R. Civ. P. 4(h)(1)(A) ....................................................................................................... 19

Fed. R. Civ. P. 56 ....................................................................................................................... 5

S.D. Fla. LR 56.1 ........................................................................................................................ 5

S.D. Fla. LR 7.3 ...................................................................................................................... 9, 11

## Treatises

Restatement (Second) of Contracts § 203(a) (1981)................................................................. 14

Plaintiff OJ Commerce, LLC ("Plaintiff") hereby respectfully moves, pursuant to Fed. R. Civ. P. 56 and S.D. Fla. LR 56.1, for summary judgment on Count III of its Complaint[1] and Defendant's affirmative defenses.  In support thereof, Plaintiff submits this memorandum of law, along with the Declaration of Aaron W. Davis, dated November 13, 2020 ("Davis Decl."), with attached exhibits, the Declaration of Jacob Weiss, dated November 13, 2020 ("Weiss Decl."), and Plaintiff's Statement of Material Facts in Support of its Motion for Summary Judgment ("SOMF").

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff, an e-commerce company, bought two insurance policies from Defendant Beazley USA Services, Inc. ("Defendant") and faithfully paid tens of thousands of dollars in premiums on time and in full.  As a reward for giving Defendant its business, when the time came for Defendant to provide Media Liability coverage for a trademark lawsuit filed by The Noco Company against Plaintiff, Defendant did everything it could to ensure that Plaintiff's claim would be denied.  Accordingly, here are the issues that relate to Count III of the Complaint on which Plaintiff is moving for summary judgment:

● The letter dated May 29, 2018 from The Noco Company to Plaintiff ("the NOCO Letter") did not constitute a "Claim" under the policies at issue or the law, and should not have been used by Defendant as a basis to deny coverage of the Noco trademark lawsuit.  *See* Argument, Section III, *infra.*

● The NOCO Letter and the Noco trademark lawsuit are not a "Single Claim" under the policies at issue, because the NOCO Letter was not a "Claim" at all.  *See* Argument, Section IV, *infra.*

● Plaintiff's insurance claim as to the Noco trademark lawsuit fell within the terms of the policy's Media Liability coverage, and thus should be covered by Defendant.  *See* Argument, Section V, *infra.*

● Defendant's denial of coverage based on its new-found contention that it was not notified of the Noco trademark lawsuit in the time-frame required by the 2018-19 Policy should

---

[1] Count IV is an alternative count to Count III.  (ECF No. 1-3, p. 6 of 6, ¶ 30.)

be rejected, because (a) the notification was in fact timely; and (b) Defendant is estopped from denying coverage.  *See* Argument, Section VI, *infra.*

● Defendant's affirmative defenses should be dismissed as a matter of law.  *See* Argument, Section VII, *infra.*

Indeed, as will be shown herein, Defendant (1) used the wrong definition of what constituted a "Claim," (2) read that wrong definition in a way that excluded coverage instead of providing coverage, in direct violation of law, and (3) withheld from Plaintiff another alleged basis for denial until after an optional insurance extension period expired, thus prejudicing Plaintiff and guaranteeing that Plaintiff could not remedy the alleged issue.  Indeed, since Plaintiff first notified Defendant of the Noco trademark lawsuit, Defendant has read its policies solely with the eye towards excluding coverage, rather than finding coverage.  This is a clear violation of the law of insurance contract interpretation.  Based on the facts and arguments that follow, Plaintiff respectfully requests entry of summary judgment in favor of Plaintiff and against Defendant as to Count III of the Complaint and Defendant's affirmative defenses.

## FACTUAL BACKGROUND

Plaintiff purchased two Beazley Breach Response Policies issued pursuant to the Florida Surplus Lines Law (collectively, "the Policies").  (SOMF ¶ 1.)  The Named Insured on the Policies is "OJ Commerce LLC OJ Commerce Inc dba Naomi Home WSports."  (SOMF ¶ 3.)  The 2017-18 Policy period was from November 11, 2017 to November 11, 2018 ("2017-18 Policy Period").  (SOMF ¶ 4.)  The 2018-19 Policy period was from November 11, 2018 to November 11, 2019 ("2018-19 Policy Period"), with an optional extension period of 12 months.  (SOMF ¶ 5.) The optional expiration period could be invoked by making an additional payment within 60 days of the termination of the policy (until January 10, 2020).  (SOMF ¶ 6.)  The Policies provided Media Liability coverage with a limit of $3,000,000.  (SOMF ¶ 7.)

"Media Liability" is defined, in part, in the 2018-19 Policy as:

[O]ne or more of the following acts committed by, or on behalf of, the Insured Organization in the course of creating, displaying, broadcasting, disseminating or releasing Media Material to the public: … 6. infringement of domain name, trademark, trade name, trade dress, logo, title, metatag or slogan, service mark or service name; [or] … 10. unfair competition, if alleged in conjunction with any of the acts listed in parts 5. or 6. above. (SOMF ¶ 8.)

The definition of "Insured Organization" means the Named Insured, here Plaintiff, and any subsidiaries. (SOMF ¶ 9.) The definition of "Media Material" is:

> [A]ny information, including words, sounds, numbers, images or graphics, but will not include computer software or the actual goods, products or services described, illustrated or displayed in such Media Material. (SOMF ¶ 10.)

The definition of "Claim" in the **2017-18 Policy** is "[A] written demand received by any Insured for money or services, including the service of a suit or institution of arbitration proceedings." (SOMF ¶ 11.) The definition of "Claim" was expanded in the **2018-19 Polic**y to "[A] written demand received by any Insured for money or services, or any non-monetary or injunctive relief, including the service of a suit or institution of arbitration proceedings." (SOMF ¶ 12.) The Notice of Claim or Loss section states in pertinent part:

> The Insured must notify the Underwriters of any Claim as soon as practicable, but in no event later than: (i) 60 days after the end of the Policy Period; or (ii) the end of the Optional Extension Period (if applicable). (SOMF ¶ 13.)

On October 2, 2019, The Noco Company ("NOCO") filed a complaint in the United States District Court for the Northern District of Ohio, Case No. 1:19-cv-02298-JG, for six claims against Plaintiff ("the NOCO Action" or "NOCO Complaint"): (1) Declaratory Judgment / Injunctive Relief; (2) Unfair Competition; (3) Tortious Interference with Contract: (4) Trademark Infringement (15 U.S.C. § 1114); (5) Trademark Dilution (15 U.S.C. § 1125); and (6) Ohio Deceptive Trade Practices (Ohio Revised Code § 4165.02). (SOMF ¶ 17.) In that complaint, NOCO claimed it was entitled to monetary damages and injunctive relief from Plaintiff. (SOMF ¶ 19.) Plaintiff received notice of the NOCO Action after October 10, 2019, but before November 11, 2019 via U.S. Mail. (SOMF ¶ 20.) Plaintiff then provided notice of the NOCO Action to Defendant on December 2, 2019. (SOMF ¶ 21.)

By letter dated December 31, 2019 ("the Denial Letter"), Defendant denied Plaintiff's claim for coverage of the NOCO Action, solely based on two related assumptions: (1) that Plaintiff allegedly received a letter dated May 29, 2018 letter ("the NOCO Letter") that supposedly was "a written demand for money, services, or nonmonetary or injunctive relief"; and (2) that Plaintiff never notified Defendant of the NOCO Letter and therefore, Plaintiff's claim as to the NOCO Action was deemed a single claim that arose prior to the term of the 2018-19 Policy and thus no coverage was available. (SOMF ¶ 22.) Defendant also then concluded that no coverage was available under Plaintiff's 2017-18 policy either, because "no written

notice of the [NOCO] Letter was ever provided to [Defendant]." (SOMF ¶ 23.) On January 7, 2020, Plaintiff informed Defendant that its assumption that Plaintiff received the NOCO Letter was mistaken, as no such letter was received by Plaintiff, whether by conventional mail or email. (SOMF ¶ 36.) Nonetheless, Defendant did not change its coverage denial decision, and this lawsuit followed.

## PROCEDURAL BACKGROUND

This case was originally filed in Florida State court on January 14, 2020 by Plaintiff against Defendant, for refusal to provide coverage, on two separate and distinct claims (the "Guidecraft Complaint" and the "Noco Complaint") under media liability policies that were issued by Defendant to Plaintiff. (ECF No. 1-3.) In its Complaint, Plaintiff sought payment of its attorney's fees pursuant to Fla. Stat. § 627.428(1). (ECF No. 1-3, pp. 3-5.) Plaintiff also attached the Policies to its Complaint, which included the statement: "THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW." (ECF No. 1-4, pp. 2-3, 73 of 170 ("SURPLUS LINES INSURERS' POLICY RATES AND FORMS…").) On January 31, Defendant removed the case to this Court based on diversity. (ECF No. 1.) In its Notice of Removal, Defendant acknowledged that Plaintiff sought "statutory attorney's fees pursuant to Fla. Stat. § 627.428 ." (SOMF ¶ 38.) On February 25, Plaintiff voluntarily dismissed the claims related to the "Guidecraft Complaint" (ECF No. 10), and that dismissal was approved by this Court. (ECF No. 11.)

On February 27, Defendant filed an answer, 34 affirmative defenses[2], and a four (4) count counterclaims related to the Noco Complaint ("Noco Counterclaims") and the dismissed Guidecraft claim ("Guidecraft Counterclaims"), seeking declaratory relief that it was not obligated to pay for such defenses under its media liability policies. (ECF No. 13.) Notably, Defendant did not raise New York law as an affirmative defense to any of Plaintiff's allegations, including Plaintiff's request for attorney's fees under Fla. Stat. § 627.428 (ECF No. 1-3, pp. 3-5.) On March 19, after a meet and confer requesting a voluntary dismissal of the counterclaims, Defendant refused to withdraw them, and forced Plaintiff to file a motion to dismiss. (ECF No.

---

[2] Defendant subsequently withdrew its Fifth and Sixth affirmative defenses with prejudice, related to its contention that it is not the proper party, via stipulation. (ECF No. 74.) The stipulation was subsequently approved by this Court. (ECF No. 76.) Similarly defenses No. 7, 9, 11, and 13 became obsolete after the Guidecraft claims were dismissed (ECF No. 10), as those defenses were unique to those claims. (ECF No. 13, pp. 7-8 of 23.)

20.)  In its response to Plaintiff's motion to dismiss, Defendant argued that Plaintiff's claim for attorney's fees under Fla. Stat. § 627.428(1) "must be included within the amount in controversy" and that the Court could "conclude that the attorneys' fees that [Plaintiff's] counsel is likely to incur in this action through trial will bring the total amount in controversy even further above the $75,000 threshold."  (SOMF ¶ 39 (citing ECF No. 26, p. 11).)  On April 23, this Court granted Plaintiff's motion to dismiss, finding the Noco Counterclaims "serve[d] no useful purpose" and it had no subject matter jurisdiction over the Guidecraft Counterclaims.  (ECF No. 28, pp. 5-6.)

On May 22, pursuant to S.D. Fla. LR 7.3(a)(1)-(8), Plaintiff served on opposing counsel Plaintiff's draft motion for attorney's fees.  (ECF No. 29, p. 4.)  The parties met and conferred on June 10.  (*Id.*)  On the conference call, Defendant advised that it only disputed entitlement, but had no objection as to the amount.  (*Id.* at pp. 4-5.)  During the meet and confer communications, Defendant never asserted that New York law applied to the Policies.  (ECF No. 67-1, pp. 1-2.)  Plaintiff filed its motion for attorney's fees on June 22, and the briefing closed on August 3.  The Magistrate Judge denied Plaintiff's motion for attorney's fees without prejudice (ECF No. 48), and this Court adopted the Magistrate Judge's Report and Recommendation over Plaintiff's objections.  (ECF No. 69.)

Plaintiff now moves for summary judgment that Plaintiff's claim with respect to the NOCO Action should have, as a matter of law, been covered under the 2018-19 Policy and that Defendant's affirmative defenses should be dismissed with prejudice.

## ARGUMENT

### I.    Legal Standard for Summary Judgment.

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Bank of Brewton v. Travelers Co.*, 777 F.3d 1339, 1342 (11th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).  "For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1366 (S.D. Fla. 2017) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a

showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## II.   Florida law applies to the Policies.

The 2018-19 Policy was purchased by Plaintiff under the Florida Surplus Lines Law. (SOMF ¶ 40.)  The Florida Surplus Lines Law contains numerous provisions that regulate under Florida law the sale of such policies in order to "provide orderly access for the insuring public of this state to insurers not authorized to transact insurance in this state...." *See* Fla. Stat. §§ 626.913 *et seq*.  Thus, Florida has a public policy interest in protecting insureds and insurers under Florida law related to the sale and purchase of Surplus Line Policies.  Indeed, the parties' intent to be subject to the Florida Surplus Lines law is stated on the cover page and first pages of the Policies.  (ECF No. 1-4, pp. 2-3, 73 of 170.)  Nonetheless, Defendant contends that a New York Choice of Law provision in the 2018-19 Policy should be applied instead.  But "ambiguous policy provisions are to be liberally construed in favor of the insured and against the insurer, as drafter of the contract, under the rule of *contra proferentem*." *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pitts.*, 734 F. Supp. 2d 1304, 1314 (S.D. Fla. 2010) (citing *Dickson v. Economy Premier Assur. Co.*, 36 So.3d 789 (Fla. 5th DCA 2010)); *Lavanant v. General Accident Ins. Co.*, 584 N.Y.S.2d 744, 747 (N.Y. 1992) (ambiguities "must be resolved in favor of the insured and against the insurer").  Thus, to the extent that there is an ambiguity as to which state's law applies, the law is uniform that the issue should be construed in favor of the insured, Plaintiff.

Regardless, Defendant previously waived the application of New York law.  "[A] party waives its opportunity to rely on non-forum law where it fails to timely provide – typically in its complaint or the first motion or response when choice-of-law matters – the sources of non-forum law on which it seeks to rely." *Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (citing *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (per curiam) ("Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as Florida law.")).  From Defendant's very first filing in this case, when choice-of-law mattered, Defendant cited to **Fla. Stat.** § 627.428(1) to justify its removal of Plaintiff's Complaint.  (SOMF ¶ 38.)  Then like in *Sun Life*, Defendant did not plead non-forum law in its Amended Answer, Affirmative Defenses, and Counterclaims.  (*See* ECF No. 13.)  And not only did Defendant fail to proffer New York law in its response to Plaintiff's motion to dismiss, Defendant actually argued that **the Florida**

10

**attorney's fees statute applied** and therefore it supplied the needed threshold amount in controversy to defeat Plaintiff's motion.  (SOMF ¶ 39; *see also* ECF No. 36, p. 3.)  That response was, at the very latest, the first response when choice-of-law mattered,[3] yet Defendant argued that Florida law applied, not New York law.  "Not only did [Defendant] fail to plead non-forum law, it seemed quite content early in the litigation with the application of Florida law…." *Sun Life*, 904 F.3d at 1209.

From the very outset of the case, every time choice of law mattered, Defendant cited Florida law, not New York law, because it helped Defendant's then-current position.  (SOMF ¶¶ 38-39.)  Only after Defendant was faced with having to pay attorney's fees pursuant to the Florida statute it had repeatedly cited to did Defendant switch positions to New York law.[4] (ECF No. 33, pp. 5-6.)  This fact dooms Defendant's position.  *Jewelry Repair Enters., Inc. v. Somn Le Enters., Inc.*, Case No. 15-CV-81622, 2016 WL 8739605, at *4 (S.D. Fla. Apr. 1, 2016) (holding that although parties are not required to plead choice-of-law issues at the outset of the case, they must raise them in time to be properly considered).  Defendant has also argued that the New York choice-of-law provisions were in the Policies attached to the pleadings, and thus part of the record.  But Defendant did not raise its contention that New York law applied until its response to Plaintiff's fees motion, **after** it waived its applicability.  (ECF No. 33, pp. 5-6.)

Also, New York has no "normal relationship" to the Policies.  (*See* ECF No. 49, pp. 7-8 (citing *Inetianbor v. CashCall, Inc.*, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015)).)  Now after discovery, it is readily apparent and undisputed that the Policies' transactions, negotiations, and purchases took place in Florida through a Florida agent under the Florida Surplus Lines Law.  (SOMF ¶ 42.)  Indeed, Plaintiff had no connection to the State of New York.  (SOMF ¶¶ 43-52.)

---

[3] Choice of law also mattered in Defendant's Notice of Removal, where it again chose to cite Florida law. (SOMF ¶ 38.)

[4] Defendant also waived New York law when, during the parties' pre-filing meet and confer held prior to Plaintiff's motion for attorney's fees, Defendant made no mention that it would oppose the motion based on New York law applying, thereby violating LR 7.3(b).  (SOMF ¶ 41.)  Indeed, **Defendant did not** "describe in writing and with reasonable particularity" and "provide supporting legal authority" for its later-raised arguments of New York law applying to the policies. (*See* SOMF ¶ 41.)  Such a "flippant[] disregard[] [for] the Local Rules—especially rules that are designed to conserve the Court's resources" justifies a finding that the responding party waived its later-raised arguments by failing to comply with S.D. Fla. LR 7.3(b).  *Club Madonna, Inc. v. City of Miami Beach*, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)).

Case 0:20-cv-60214-WPD   Document 84   Entered on FLSD Docket 11/13/2020   Page 12 of 25

And all the Underwriting done by Defendant on the policies was conducted in Atlanta, Georgia, not in New York. (SOMF ¶ 53.) These undisputed facts, including the language of the policy documents themselves, connecting the Policies to Florida make it clear that they had no "normal relationship" to New York, and thus this Court should use Florida law to interpret the Policies.

## III.   The NOCO Letter was not a "Claim" according to the Policies and the Law.

Plaintiff did not receive the NOCO Letter before receiving a copy of NOCO's Complaint filed on October 2, 2019. (SOMF ¶ 54.) Regardless, this is a non-issue, because the NOCO Letter does not constitute a "Claim" under the Policies. Defendant has contended that the NOCO Letter "is a written demand for money, services, or nonmonetary or injunctive relief," and thus a "Claim." (SOMF ¶ 55.) According to Defendant, because the NOCO Letter was not reported to Defendant within the sixty days following the expiration of the 2017-18 Policy period, no coverage was available. (SOMF ¶ 56.) But Defendant's assertion that the NOCO Letter constitutes a "Claim" is incorrect.

As an initial matter, the NOCO Letter does not contain a demand for any "money," nor does it demand any "service" from Plaintiff. (SOMF ¶ 76.) It simply asks Plaintiff to comply with its Minimum Advertised Price ("MAP") Policy, (*id.*; SOMF ¶ 64), and threatens a future lawsuit if Plaintiff does not comply. (SOMF ¶ 60.) "Equating the mere threat of a claim with an actual claim negates the 'necessarily' element in the very definition of 'claim.'" *Aguilar v. Royal Surplus Lines Ins. Co.,* 2006 WL 2038643, at *8 (Bankr. S.D. Fla. June 5, 2006) (quoting *F.D.I.C. v. Booth*, 82 F.3d 670, 676 (5th Cir. 1996)). "[T]o constitute a claim, a demand for something due or believed to be due must be made." *Id.* at *9 (rejecting the insurer's contention that "Florida makes no distinction between reporting a potential claim and an actual claim").

Thus, Defendant's "claim" argument as it relates to the NOCO Letter should be rejected on that basis alone. *See Clarendon Nat. Ins. Co. v. Muller,* 237 Fed. Appx. 451, 452 (11th Cir. 2007)("[a] letter simply inform[ing] [insured] that, if future events did not resolve [claimant]'s concerns that he and the trust would suffer damages as a result of [insured]'s [conduct]" does not satisfy a Claim definition of "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services," instead, clarified that "[claimant] may make a demand for money or services, in the form of a lawsuit"); *National Union Fire Ins. v. Bartolazo*, 27 F.3d 518, 519 (11th Cir. 1994) (holding that a letter demanding neither money nor services and only alluding to a potential

12

claim did not constitute a "claim"); *Ramey v. Interstate Fire & Cas. Co*., 32 F. Supp. 3d 1199, 1205 (S.D. Fla. 2013) ("A notice of a potential claim does not constitute a demand for money and, thus, a 'claim' under the policy.").

In *Tree Top Inc. v. Starr Indem. & Liab. Co.*, a case with a substantially similar claim definition, namely "written demand for money, services, non-monetary relief or injunctive relief," the court held that a demand letter where the claimant "intends to bring suit," did not constitute a "claim," reasoning that "[the insurer] could have defined a 'claim' as any communication expressing an intent to hold the insured liable for an alleged wrongdoing," but as written, such a demand is not a "claim," and "the Court will not redraw those lines after the fact." 280 F. Supp. 3d 1206, 1209 (E.D. Wash. 2017). This reasoning is equally applicable here.

Additionally, "[u]nder Florida law, it is well settled that the construction of an insurance policy, including the extent of coverage, is a question of law for the court." *Reuter v. Lancet Indemnity Risk Retention Group, Inc.*, 262 F.Supp.3d 1341, 1348 (S.D. Fla. 2017); *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1540 (11th Cir. 1990) (applying Florida law); *Barnhardt v. Hudson Valley Dist. Coun.*, 494 N.Y.S.2d 667, 669 (N.Y. App. Div. 1985) ("Ordinarily, construction or interpretation of a contract is a matter of law for the courts."). The interpretation of insurance contracts is governed by generally accepted rules of construction. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007). "Insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005).

The term "Claim" is defined in **2017-18 Policy** as "a written demand received by any Insured for money or services, including the service of a suit or institution of arbitration proceedings." (SOMF ¶ 11.) The addition of the terms "or nonmonetary or injunctive relief" to the definition of "Claim" were not included until the **2018-19 Policy**. (*Compare* SOMF ¶ 11 *with* ¶ 12.) Nonetheless, Defendant misled Plaintiff and this Court by asserting that the 2018-19 Policy definition applied to the alleged NOCO Letter "Claim" (dated May 29, 2018), when that issue was clearly subject to the 2017-18 Policy (Nov. 11, 2017 – Nov. 11, 2018) definition. (SOMF ¶ 57.) As such, Defendant's entire argument in its Denial Letter (and its summary-judgment motion) based on the NOCO Letter being a "Claim" hinges on an incorrect, expanded definition and should be rejected.

13

With respect to the term "demand" used in the definition of "Claim," it is not defined in either of the Policies.  (SOMF ¶ 58.)  Nor does the context make certain its meaning.  *See, e.g., Garcia v. Federal Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007) (policy language is considered ambiguous if it is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage); *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994) (stating that ambiguity arises when the context of a term results in more than one plausible meaning).  The second part of the definition of "Claim" – "including the service of a suit or institution of arbitration proceedings" – can certainly be viewed as a list of illustrative examples of "demands."  "The Court could then conclude that because all the illustrative examples are formal proceedings, then 'demands' must only encompass formal proceedings." *O'Brien & Wolf, L.L.P. v. Liberty Ins. Underwriters, Inc.*, CIV. 11-3748 JNE/SER, 2012 WL 3156802, at *3 (D. Minn. Aug. 3, 2012).  "Demand" could also conceivably be interpreted broadly to effectuate something beyond the formal proceedings specifically listed in the definition, even though no informal examples are given.  *See Office Depot*, 734 F. Supp. 2d at 1314 ("courts … should read all terms in light of the policy as a whole, with every provision given its full meaning and operative effect").

These two reasonable interpretations lead to the conclusion that "demand" as contained in the definition of "Claim" is ambiguous.  *Taurus Holdings*, 913 So.2d at 532.  When confronted with an ambiguous term, courts prefer a reasonable and lawful interpretation of the contract over one that is unreasonable or unlawful.  *See* Restatement (Second) of Contracts § 203(a) (1981). With respect to insurance contracts, "[a]mbiguities are construed against the insurer and in favor of coverage." *Taurus Holdings*, 913 So.2d at 532.  Accordingly, the ambiguity as to the scope of "Claim" must be construed to favor coverage.  *Id.*; *see also Office Depot*, 734 F. Supp. 2d at 1314 ("ambiguous policy provisions are to be liberally construed in favor of the insured and against the insurer, as drafter of the contract, under the rule of *contra proferentem*" (citing *Dickson*, 36 So.3d 789)); *see also Lavanant*, 584 N.Y.S.2d at 747 ("[w]here there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer").  Therefore, the NOCO Letter was not a "Claim" in that it did not include, initiate, or serve any formal proceedings, such as those listed in the definition.  (SOMF ¶ 59.)

Moreover, the NOCO Letter only contained a warning or "possibility of litigation," not a present or formal claim.  *Clarendon Nat'l Ins. Co. v. Massari*, No. 8:05CV1282T-26MSS, 2006

14

WL 3422083, at *5 (M.D. Fla. Nov. 2, 2006) ("[A] warning or threat of future suit is insufficient to qualify as a claim." (citing *Evanston Ins. Co. v. Security Assur. Co.*, 715 F.Supp. 1405, 1413 (N.D. Ill. 1989)). Indeed, the NOCO Letter simply complained that Plaintiff was not following NOCO's MAP Policy and that if Plaintiff did not do so in the future, "NOCO will take all necessary steps, including the possibility of litigation…." (SOMF ¶ 60.) NOCO also suggested that if Plaintiff kept reselling NOCO's products that it "**may** result in additional legal action." (SOMF ¶ 61 (emphasis added).) The NOCO Letter ended with its counsel stating that the correspondence contained "OUR CLIENT'S RIGHTS OR **POTENTIAL CLAIMS**…." (SOMF ¶ 62 (emphasis added).)

Defendant has argued in its summary-judgment motion that the law draws no distinction between a potential claim and an actual claim. (ECF No. 79, p. 20 of 27.) But as shown above, that contention has been soundly rejected by numerous courts. *Massari*, 2006 WL 3422083, at *4 (citing *Aguilar*, 2006 WL 2038643, at *6-8); *see also Evanston Ins. Co.*, 715 F. Supp. at 1413 (communications telling a party "in no uncertain terms, … it would be held liable for any possible future damages flowing from its refusal" to abide by the sender's demands did not qualify as a "present claim"); *Giles v. St. Paul Fire & Marine Ins. Co.*, 404 N.Y.S.2d 190, 192 (N.Y. App. Div. 1978) (holding that an insurer's interpretation that giving notice of a "potential claim" is required leads to a finding that the policy is ambiguous and thus will be construed against the insurer). Here, the NOCO Letter undisputedly refers to "potential claims," "the possibility of litigation," and that "additional legal action" "may result." (SOMF ¶¶ 60-62.) None of those communications to Plaintiff constituted a present, formal "Claim" under the Policies, which is another reason the Court should find that the NOCO Letter did not constitute a "Claim" as a matter of law.

## IV. The NOCO Letter and the NOCO Complaint are not a "Single Claim" under the Policies, because the NOCO Letter was not a "Claim" at all.

In its summary-judgment motion, Defendant contends that "Claims that arise from the same of related events are 'considered a single Claim.'" (ECF No. 79, p. 21 of 27.) But Defendant's contention is fatally flawed. Specifically, Defendant's "Single Claim" argument relies on the NOCO Letter being a "Claim," which it was not, as shown above in Section III. Thus, because the NOCO Letter was not a "Claim," Plaintiff had no obligation to report the letter to Defendant. *Massari*, 2006 WL 3422083, at *4 ("controlling precedent considering the

15

definition of claim under Florida law requires a clear demand from a third party before a claim exists" (citing *Bartolazo*, 27 F.3d at 519).)  Accordingly, Defendant's "Single Claim" exclusion argument fails as a matter of law.

Moreover, at most, the NOCO Letter was a request that Plaintiff abide by NOCO's MAP Policy.  (SOMF ¶ 63.)  Indeed, NOCO's CFO, Jeffrey Weiner, testified that if Plaintiff had abided by NOCO's MAP Policy, as stated in the NOCO Letter, there would have been no issue between the parties at all.  (SOMF ¶ 64.)  Importantly, nowhere in the NOCO Complaint is the term "MAP Policy" ever mentioned.  (SOMF ¶ 65.)  Nor do any of the NOCO's claims allege that Plaintiff violated NOCO's MAP Policy, as alleged in the NOCO Letter.  (SOMF ¶ 66.)  Thus, not only is the NOCO Letter not a "Claim," but by the very terms of the NOCO Letter and the NOCO Complaint, the two documents do not constitute a "Single Claim" that arise from the same or related events, *i.e.,* Plaintiff's supposed violation of NOCO's MAP Policy.  Defendant's argument that the NOCO Letter and NOCO Complaint are the "same Claim" should also be dismissed as a matter of law.

**V.      Plaintiff's Claim as to the NOCO Action fell within the terms of Media Liability coverage, and thus should be covered by Defendant.**

In its Denial Letter to Plaintiff, Defendant only contended that (1) Plaintiff allegedly received the NOCO Letter that supposedly was "a written demand for money, services, or nonmonetary or injunctive relief"; and (2) that Plaintiff never notified Defendant of the NOCO Letter and therefore, Plaintiff's claim as to the NOCO Action was deemed a single claim that arose prior to the term of the 2018-19 Policy and thus no coverage was available.  (SOMF ¶ 22.)  Both of those arguments should be rejected as set forth in Section III and IV. above.  No other justifications for denial of coverage were included in Defendant's Denial Letter.[5]  (SOMF ¶¶ 26-27.)  And other than Defendant's "Plaintiff-has-suffered-no-damages" argument contained in its summary-judgment motion (ECF No. 79, pp. 23-25 of 27), Defendant has identified no other basis for denying coverage of Plaintiff's claim as to the NOCO Action.

In *G & E Tires & Service*, the First District Court of Appeal held:

---

[5] Defendant also concluded that no coverage was available under Plaintiff's 2017-18 policy either, because "no written notice of the [NOCO] Letter was ever provided to [Defendant]." (SOMF ¶ 23.)  That argument also fails for the same reasoning contained in Section III, *i.e.,* because the NOCO Letter was not a "Claim."

An insurer's duty to defend is to be determined from the allegations in the complaint against the insured. *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533 (Fla. 1977); *State Farm Fire and Cas. Co. v. Edgecumbe*, 471 So.2d 209 (Fla. 1st DCA 1985); *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810 (Fla. 1st DCA 1985). The insurer must defend if the allegations in the complaint could bring the insured within the policy provisions of coverage. *State Farm Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So.2d 1184 (Fla. 1st DCA 1981), rev. denied, 413 So.2d 877 (Fla. 1982). If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit. *Tropical Park, Inc., v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla. 3rd DCA 1978). The duty to defend is separate and apart from the duty to indemnify and the insurer is required to defend the suit even if the true facts later show there is no coverage. *Klaesen Bros., Inc. v. Harbor Ins. Co.*, 410 So.2d 611 (Fla. 4th DCA 1982). All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured. *Baron Oil Co.*, 470 So.2d at 814. So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit. *Tropical Park*, 357 So.2d at 256.

*Colony Ins. Co. v. G & E Tires & Service, Inc.*, 777 So.2d 1034 (Fla. 1st DCA 2000). The 2018-19 Policy provided Media Liability coverage with a limit of $3,000,000. (SOMF ¶ 7.) "Media Liability" is defined, in part, as:

> [O]ne or more of the following acts committed by, or on behalf of, the Insured Organization in the course of creating, displaying, broadcasting, disseminating or releasing Media Material to the public: … 6. **infringement** of domain name, **trademark**, trade name, trade dress, logo, title, metatag or slogan, service mark or service name; [or] … 10. **unfair competition**, if alleged in conjunction with any of the acts listed in parts 5. or **6**. above.

(SOMF ¶ 8 (emphasis added).)  The 2018-19 Policy provided coverage for Damages and Claims Expenses related to "any Claim first made against any Insured during the Policy Period." (SOMF ¶ 14.)  The definition of "Damages" covered a wide range of "monetary judgment, award or settlement" (SOMF ¶ 15), and "Claims Expenses" included "all reasonable and necessary legal costs and expenses resulting from the investigation, defense, and appeal of a Claim…."  (SOMF ¶ 16.)

The NOCO Complaint contained six claims:  (1) Declaratory Judgment / Injunctive Relief related to Plaintiff use of NOCO's trademarks; (2) Unfair Competition related to trademark infringement; (3) Tortious Interference with Contract: (4) Trademark Infringement (15 U.S.C. § 1114); (5) Trademark Dilution (15 U.S.C. § 1125); and (6) Ohio Deceptive Trade Practices (Ohio Revised Code § 4165.02) as to the "unauthorized use" of NOCO's trademarks.

(SOMF ¶ 17; ECF No. 1-5, pp. 37-41 of 46.)  Five out of NOCO's six claims[6] clearly and unambiguously fall under the Media Liability definition of the 2018-19 Policy, as the claims relate to trademarks.  (SOMF ¶ 18.)  Defendant has never argued or shown otherwise. Accordingly, the NOCO Action should be covered under the 2018-19 Policy as a matter of law.

**VI.    Defendant's denial of coverage based on its new-found contention that it was not notified of the NOCO Action in the time-frame required by the 2018-19 Policy should be rejected, because (a) the notification was in fact timely; and (b) Defendant is estopped from denying coverage based on that contention as its delay in informing Plaintiff of that alleged basis prejudiced and was detrimental to Plaintiff.**

In its summary-judgment motion, Defendant contends for the first time that "[b]ecause [Plaintiff] did not first receive the *Noco* Complaint until after the policy periods ended on November 11, 2019, *id.* ¶ 42, no coverage is available under these Policies, which require the demand to have been received during the policy periods."  (ECF No. 79, p. 18 of 27.)  But Defendant made no mention of such a reason for coverage denial in the Denial Letter.  (SOMF ¶ 25.)  Indeed, the entirety of Defendant's coverage denial was based on the NOCO Letter being a "Claim" under the Policies.  (SOMF ¶ 26.)  But now, Defendant contends that because the NOCO Complaint was allegedly not received (which is incorrect) by Plaintiff until after November 11, 2019, the NOCO Action is excluded from coverage.

Plaintiff contests Defendant's assertion, based in no small part on the Declaration of Jeffrey Weiner, CFO of NOCO, wherein he swears that Plaintiff received notice of the NOCO Action soon after October 10, 2019 via U.S. Mail.  (SOMF ¶ 67.)  And as argued by Defendant in its summary-judgment motion, that letter was presumptively received by Plaintiff in October 2019 because it was properly addressed, stamped, and placed in the mail.  (ECF No. 79, p. 21 of 27 (citing *Seasons Hospice & Palliative Care of S. Fla. V. Azar*, 2020 WL 5848769, at *8-9 (S.D. Fla. Oct. 1, 2020)).  As such, the NOCO Action was received by Plaintiff before the end of the 2018-19 Policy Period (November 11, 2019).

Moreover, Defendant admits that the NOCO Action was a "Claim" as defined under the 2018-19 Policy.  (SOMF ¶ 30.)  The definition of "Claim" "includ[es] the service of a suit."

---

[6] The only possible exception would be NOCO's Tortious Interference with Contract claim. Nonetheless, "[i]f the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit."  *Tropical Park*, 357 So.2d at 256; *Sport Rock Intern. Inc. v. American Cas. Co. of Reading, PA*, 65 A.D.3d 12, 17–18 (1st Dep't 2009) (same applying New York law).

(SOMF ¶ 12.)  Pursuant to Fed. R. Civ. P. 4(h)(1)(A) and (e)(1), a domestic corporation, partnership, or association, such as Plaintiff, may be served in a judicial district of the United States "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  With respect to the NOCO Action, that court would be in Ohio and thus Ohio state law would apply.  (*See* ECF No. 1-5, p. 34 of 46.)  According to Ohio Revised Code § 1923.06(E) and (G)(3), if the clerk mails by certified mail, return receipt requested, a copy of the summons and complaint to the address on the caption of the summons, and the mail is not returned, "the service of process shall be deemed complete … on the date of mailing."  It is undisputed that the clerk in the N.D. Ohio mailed by certified mail, return receipt requested, on October 10, 2019, a copy of the summons and complaint to Plaintiff's address on the caption of the summons, and the mail was not returned. (SOMF ¶¶ 68-69.)  Therefore, service of process of the NOCO Action was deemed complete on October 10, 2019, well within the 2018-19 Policy Period.  Ohio Revised Code 1923.06(E) and (G)(3).

Defendant has also completely reversed its position on this issue since the inception of this case.  In the initial Denial Letter, Defendant conducted its coverage analysis using a NOCO Action date of October 2, 2019, after admitting that "it reviewed the docket in the Noco Action after [Plaintiff's] notice was provided."  (ECF No. 1-5, p. 45 of 46.)  Yet, now, Defendant cites that very same docket to change the coverage analysis date to November 13, 2019.  (ECF No. 79, p. 12 of 27.)  Similarly, Defendant in its counterclaim for declaratory relief on the NOCO Action, also relied on a coverage analysis with a claim date of October 2, 2019.  (ECF No. 13, p. 17, ¶ 33.)  Such switching of coverage analysis positions by Defendant is inherently unfair, and should be rejected.

Defendant has admitted that the NOCO Action was reported to Defendant on December 2, 2019.  (ECF No. 79-1, ¶ 54.)  The 2018-19 Policy Period ended on November 11, 2019. According to that policy:

> The Insured must notify the Underwriters of any Claim as soon as practicable, but in no event later than: (i) 60 days after the end of the Policy Period; or (ii) the end of the Optional Extension Period (if applicable).

(SOMF ¶ 13.)  December 2, 2019 is well within 60 days after the end of the 2018-19 Policy Period.  Therefore, despite Defendant's unfounded contention to the contrary, Plaintiff's notice

19

of the NOCO Action was timely and should have been covered. *See Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So. 2d 512, 514 (Fla. 1983) ("The essence, then, of a claims-made policy is notice to the carrier within the policy period.").

But even if it is presumed, *arguendo*, that Plaintiff did not receive the NOCO Action until November 13, 2019, the NOCO Action should still be covered by Defendant based on promissory estoppel. Although the general rule is that "[c]overage cannot be extended by the doctrine of waiver and estoppel," *Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 268 So.2d 560, 563 (Fla. 4th DCA 1972), "[a]n exception to the general rule is the doctrine of promissory estoppel, a qualified form of equitable estoppel which applies to representations relating to a future act of the promisor rather than to an existing fact … Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment … We see no reason why this equitable doctrine should not also apply to insurance contracts." *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661–62 (Fla. 1987).

Here, the Denial Letter did not state that notice of the NOCO Action was provided late. (SOMF ¶ 31.) Defendant should have reasonably expected its omission in its Denial Letter would induce Plaintiff not to purchase the Optional Extension Period coverage. Additionally, Defendant's Denial Letter failed to comply with Fla. Stat. § 627.426(2) (2016), which states that:

> A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless: (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery.

The Denial Letter neither contained this new defense, nor was delivered by registered, certified mail, or by hand, as required by the Florida statute. (SOMF ¶¶ 31, 70.)

Had Defendant included that reasoning in its Denial Letter (dated December 31, 2019), Plaintiff would have still been able to purchase the Optional Extension Period of 12 months, as Plaintiff had 60 days from November 11, 2019 (until January 10, 2020) to do so. (SOMF ¶¶ 6, 34.) According to the 2018-19 Policy, "[c]overage provided by such Optional Extension Period will only apply to Claims first made against any Insured during the Optional Extension Period and reported to the Underwriters during the Optional Extension Period, and arising out of any

act, error or omission committed before the end of the Policy Period." (SOMF ¶ 71.) If the November 13, 2019 date alleged by Defendant is presumed, the NOCO Action would have been first made against Plaintiff during the Optional Extension Period, reported during that same period, and arose out of acts committed before the end of the Policy Period, as the NOCO Action was filed on October 2, 2019. The NOCO Action would have been covered had the extension been purchased.

But instead of informing Plaintiff on December 31, 2019 in the Denial Letter that Defendant believed the NOCO Action notification was made late, Defendant withheld that position until after the 60-day period for Plaintiff to purchase the Optional Extension Period had long expired. (SOMF ¶ 33.) Had Plaintiff known Defendant's position during the 60 days after the 2018-19 Policy Period ended, it would have purchased the Optional Extension Period to overcome Defendant's objection. (SOMF ¶ 34.) Plaintiff relied on Defendant's Denial Letter to include its rationale as to why coverage was being denied, and was thus prejudiced by Defendant withholding its late-notice position until after the 60-day period expired. (SOMF ¶ 35.) Not only is Defendant's contention that Plaintiff received the NOCO Action until after the 2018-19 Policy Period incorrect, even if it is presumed, Defendant should be estopped from denying coverage, as its delay in informing Plaintiff was detrimental and guaranteed that Plaintiff could not purchase the optional coverage.

**VII.    All of Defendant's affirmative defenses must be dismissed.**

Although Defendant raised 34 affirmative defenses, Nos. 5 and 6 were withdrawn (ECF Nos. 74, 76), and No. 7, 9, 11 and 13 became obsolete after dismissal of the Guidecraft action (ECF No. 10), as those defenses were unique to those claims (ECF No. 13, pp. 7-8 of 23). Additionally, Nos. 4, 17, 18, 20, 21, 22, 23, 25 are irrelevant to this motion as they are specific to the 2017-18 Policy Period, referenced only in Count IV of the Complaint. (ECF No. 13, pp. 6-9 of 23.) Defense Nos. 8, 10, 12, 15, 26, 27, 30, 33, and 34 deal directly with the issues raised and addressed in the parties' motions for summary judgment. (*See supra.* and Davis Decl., Ex. P7, pp. 2-8.) Defendant dropped Defenses 28 and 29. (Davis Decl., Ex. P7, p. 5.) Thus, the only defenses left are Nos. 1, 2, 3, 16, 19, 24, and 31-32. (ECF No. 13, pp. 6-11 of 23.) Plaintiff addresses each of the remaining defenses, as well as No. 15, in turn.

*Defense No. 1, Failure to State a Claim.* "A cause of action for breach of contract has three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Marcus v.*

*Guardian Life Ins. Co. of Am.*, 13-81055-CIV, 2014 WL 12279515, at *2 (S.D. Fla. Mar. 24, 2014) (Dimitrouleas, J.). Plaintiff attached to its Complaint the 2018-19 Policy that contained an explicit duty to defend for intellectual property claims. (SOMF ¶ 8.) Moreover, Defendant acknowledged the existence of a valid contract. (SOMF ¶ 2.) The NOCO Action alleges trademark violations, and triggers coverage under the policy. (SOMF ¶¶ 8, 17.) Defendant refused to provide coverage under either of the Policies. (SOMF ¶ 28.) Florida law is clear that "[i]f the insurer erroneously fails to defend its insured, its conduct constitutes a breach of contract." *Morette Co. v. S.-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1186 (N.D. Fla. 2017). Thus, Defendant's first affirmative defense must be dismissed.

   *Defense No. 15, Amounts Sought are not Damages or Claims Expenses.* Defendant also asserts that Plaintiff has no damages and therefore its breach of contract claim fails. (ECF No. 79, p. 23-27.) Defendant's basis for this defense is that "OJ Commerce has not produced evidence of covered Damages or Claims Expense." (SOMF ¶ 74.) This contention is made despite Defendant's own admission of an "agreement [dated] November 29, 2019, [whereby] OJ Commerce retained [attorney] Shlomo Hecht to defend the Noco Action." (ECF No. 79-1, p. 8, ¶ 44.) That agreement clearly indicates that "Attorney agrees to undertake [the Noco Action] engagement on a contingency fee basis." (ECF No. 80-22, p. 2.) Thus, the essence of Defendant's defense is that because the NOCO Action was taken on a contingency, it is not covered under the Policies. Defendant has not cited a single case to support its contention; in fact, there is a case on point to the contrary. In *Companion Prop. & Cas. Ins. Co. v. Category 5 Mgmt. Group, LLC*, the facts were substantially similar, where an insurance company breached its duty to defend an underlying personal injury claim, and the court awarded the defending attorney its reasonable attorney's fees, along with a fee multiplier, for the defense of the personal injury claim that was based on a contingency agreement. *Companion Prop. & Cas. Ins. Co. v. Category 5 Mgmt. Group, LLC*, 189 So. 3d 905, 907 (Fla. 1st DCA 2016). The *Category 5* court reasoned that "[insurer] had no standing to advance a construction of the contingency fee agreement to which it was neither a party nor a third-party beneficiary," and found that Defendant's position "borders on the absurd insofar as it would compel counsel to represent [insured] pro bono in the [underlying] tort action." *Id.* at 908.

   Defendant also asserts that counsel is a salaried employee, and the policy does not cover such expenses. (ECF No. 79, p. 24 of 27.) But Defendant misses the point. Mr. Weiss,

Plaintiff's corporate representative, testified in his deposition that Mr. Hecht's duties and obligations as a salaried employee is primary for his work as a Chief Technology Officer, and transactional work as general counsel, but specifically does not include litigation, such as the NOCO Action. (SOMF ¶ 75.)  Additionally, the provision in the Policy Defendant relies on that salaried employees are not covered, pertains specifically to "time spent in cooperating in the defense and investigation of any Claim or circumstance that might lead to a Claim," and not to "reasonable and necessary fees charged by an attorney." (SOMF ¶¶ 16, 77.)  Defendant's 15th affirmative defense, also raised in its summary-judgment motion, must be dismissed as well.

*Defense No. 2, Claim Barred by Express Provisions of Insurance Policy; No. 3 No Insurance Agreement was Triggered; Defense No. 16, Media-Related Exposures Exclusion.; Defense No. 19, Trade Practices & Antitrust Exclusion; Defense No. 24, Criminal, Intentional or Fraudulent Acts Exclusion; Defense No. 31, Action Against the Underwriters Provision; Defense No. 32, Not Satisfied Applicable Retentions.*  Defendant has not put forth a single provision or fact to substantiate any of these defenses.  "The interpretation of an insurance agreement is a question of law."  *Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308, 1313 (S.D. Fla. 2015), *aff'd*, 658 Fed. Appx. 955 (11th Cir. 2016).  Other than what Plaintiff has already addressed above, Defendant has not - and cannot - identify any additional factual or contractual basis that would bar Plaintiff's claim related to the NOCO Action.  (*See* ECF No. 81-3, p. 115 of 152, 114:4-25.)  In fact, all of these defenses are borderline frivolous[7] in violation of Fed. R. Civ. P. 11(b), as they are not warranted by any law and unlikely to have any evidentiary support, and therefore these defenses must be dismissed.

## CONCLUSION

As shown throughout this motion, Defendant did everything it could, including interpreting the Policies incorrectly in violation of law, and withholding a reason for rejection that Plaintiff could have easily been remedied, to guarantee that Plaintiff's Claim related to the

---

[7] Defendant has a history of asserting baseless defenses. Since the inception of the case, Defendant repeatedly asserted a not-the-proper-party defense, including in its counterclaims, opposition to motion to dismiss, and opposition to Plaintiff's motion for attorney's fees. (*See* ECF Nos. 52, 65.)  Only after this Court granted Plaintiff's motion to compel Defendant's initial disclosures, to disclose the identity of the "proper-party" (ECF No. 66, pp. 3-4.), did Defendant voluntarily withdraw its not-the-proper-party defense, with prejudice.  (ECF Nos. 74, 76.)

NOCO Action was denied coverage.  Such avoidance of responsibility by an insurer is contrary to precedent and should not be condoned by this Court.  Plaintiff's Claim related to the NOCO Action, as a matter of law, falls within the terms of the 2018-19 Policy and should be covered. Plaintiff respectfully requests that the Court grant Plaintiff summary judgment as to Count III of its Complaint and dismiss with prejudice all of Defendant's affirmative defenses.

Dated:  November 13, 2020              Respectfully submitted,

By: s/Aaron W. Davis
Aaron W. Davis
*Admitted Pro Hac Vice*
VALHALLA LEGAL, PLLC
204 W. 7th St., PMB 222
Northfield, MN 55057
Phone: (763) 957-2397
davis@valhallalegal.com

Shlomo Y. Hecht
Florida State Bar No.: 127144
Shlomo Y. Hecht, P.A.
3076 N Commerce Parkway
Miramar, FL 33025
Phone: 954-861-0025
Email: sam@hechtlawpa.com

*Attorneys for Plaintiff OJ Commerce, LLC*

24

## <u>CERTIFICATE OF TRANSMITTAL / SERVICE</u>

I HEREBY certify that on November 13, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and served this document upon

Defendant's counsel.

/s/Shlomo Y. Hecht
Shlomo Y. Hecht
